# E. H. KELLER v. JULIUS HENVIT AND ANOTHER.[1]

April 27, 1945.

No. 33,976.

[1]Reported in 18 N. W. (2d) 544.

*Guesmer, Carson & MacGregor,* for appellant.
*Clifford W. Gardner,* for respondents.

JULIUS J. OLSON, JUSTICE.

This was an unlawful detainer action involving the possession of the Marlborough Hotel in St. Paul. Plaintiff's "procedural history" recites that the cause had its origin in a St. Paul justice's court on June 16, 1943. There was considerable time lost in legal sparring, the details of which need not be gone into, so that not until July 6 was the cause heard there. Two days later, the justice determined defendants "guilty." On July 12 they vacated the premises. "About July 12, 1943," they appealed the cause to the municipal court. The appeal came on for jury trial February 8, 1944. There the verdict was "not guilty." Plaintiff's motion for judgment notwithstanding or a new trial was denied. Judgment was entered pursuant to the verdict on October 28, 1944, and from it plaintiff appeals.

Plaintiff's case was founded upon four claimed breaches of the tenancy contract: (1) Failure to pay the city for water rent; (2) failure to pay certain monthly rentals of $1,000 each; (3) assignment by defendants of their interests in the lease to one Johnston without securing "plaintiff's consent thereto in *writing on the lease*" (italics supplied); and (4) removal of "furniture and furnishings which, by the terms of the written lease," were mortgaged

to secure due performance of its terms. Only the first three issues were submitted to the jury, the court being of opinion that as to the fourth there was no violation.

These are the facts upon which the verdict is founded: In July 1942, plaintiff purchased the premises under contract, and "about that time" entered into a written lease with defendants dated July 11, 1942. The lease was for a term of ten years from August 1 and required a monthly rental payment of $1,000, payable in advance on the tenth day of each month, the first payment to be made on August 10. Also, under its terms, defendants agreed to make a cash deposit of $3,500 to be applied on the last three and one-half months' rental of the ten-year term. The instrument recites receipt of that amount. They also agreed not to assign or sublet the premises without plaintiff's consent endorsed on the back of the lease. They were to pay all charges for city water used on the premises, and to pay for plumbing jobs if the same did not amount to more than $50; if these amounted to more, plaintiff was to share such excess with them. Defendants took possession August 1, 1942.

No cash deposit in fact was ever made. Instead, plaintiff accepted a $2,500 note secured by chattel mortgage, of which defendants were owners, and for the remaining $1,000 accepted their personal note payable to him in monthly installments. There was a dispute in the evidence as to whether this arrangement was made on the date of delivery of the lease, July 13, or the next day, claimed by defendants to be the date when the substitution was made.

On April 29, 1943, defendants assigned their interests in the lease to Mr. Johnston. It is conceded that plaintiff did not approve the assignment in writing. There is evidence, however, that he orally agreed thereto. In that connection, it should be noted, defendants claimed that, when the substituted securities were given, plaintiff agreed that the sum represented thereby, $3,500 in all, could be used at defendants' option to pay current rental payments. On this phase the court instructed the jury as follows:

"If the landlord sues his tenant for unpaid rent in which he asks a money judgment, the tenant can use as a set-off and take credit for anything the landlord owes him, but in an unlawful detainer action based on alleged nonpayment of rent, only those credits can be taken by the tenant as payments on rent which either actually were rent or which the landlord agreed could be deducted and credited as a rent payment.

"You are also instructed that the complaint in this action commenced originally in the justice court is dated June 16, 1943, and that the status of the parties in this case being tried by you is to be determined from the facts existing on that date."

As to defendants' assignment of their leasehold, the court said:

"It also appears from the evidence that on or about the 29th of April, 1943, the defendants by a written agreement sublet and assigned their lease with the plaintiff to one E. N. Johnston. Whether this was agreed to by the plaintiff is one of the principal issues in this case. It also appears from the evidence that the plaintiff assigned his lease with the defendants together with the $3,500 securities deposit to the Northwestern National Bank of Minneapolis on or about the 4th day of May, 1943. It further appears from the evidence that the bank re-assigned the lease to the plaintiff on June 16, 1943, the day this action was commenced in the justice court.

"You are instructed that an assignment does not affect the liability of the lessee for rent and that the plaintiff is entitled to look to the defendants as responsible for all payments required by the lease, irrespective of whether the subletting to Johnston was authorized or not. You are also instructed that for the purpose of this case, all payments made to the Minneapolis bank by the defendants pursuant to the assignment of the lease by the plaintiff are to be considered as payments made to the plaintiff just as if they had been made to plaintiff direct in the absence of such an assignment."

And, as to the condition of the premises, there being no issue of fraud in the evidence:

"The court instructs the jury as a matter of law that the physical condition of the leased premises, whether before defendants took possession, or during the time the defendants were in possession, is not a defense in this action. The court instructs the jury that as a matter of law, the tenant is obligated to pay a stipulated rent to the landlord so long as he continues to occupy the premises, and that the condition of the premises, regardless of what it is, does not excuse the tenant from his obligation to pay the rent so long as the tenant continues to occupy the premises."

The trial in the municipal court began February 7, 1944, and not until the late afternoon of February 15 was the cause submitted to the jury. The record discloses an exhaustive and rather spirited trial, not entirely free from bitterness. No one reading this record (covering 651 pages) can doubt that anything within reason was left unsaid or inadequately presented.

■ In this case, we think the trial court correctly appraised the main issues to be (1) whether plaintiff agreed to the assignment of the lease, and (2) whether the proceeds of the substituted deposit were to be used at defendants' option to apply upon current rents. Plaintiff strenuously denied these claims, and with equal vigor asserted that the substituted deposit was given and accepted solely for the purpose set forth in the lease as originally written.

■ The statute on which these proceedings were based is found in Minn. St. 1941, c. 566. Section 566.02 (Mason St. 1927, § 9148), provides:

"When any person has made unlawful or forcible entry into lands or tenements, and detains the same, or, having peaceably entered, unlawfully detains the same, he shall be fined, and the person entitled to the premises may recover possession thereof in the manner hereinafter provided."

We have held that this statute is designed to protect the one who is in actual possession of lands or tenements against not only forcible entry but against unlawful entry and unlawful detainer.

The right given by the statute is for possession only. Its provisions are not designed to try title or to serve as a substitute for ejectment. Instead, these provisions were intended to prevent parties from taking the law into their own hands. Mutual Trust L. Ins. Co. v. Berg, 187 Minn. 503, 505, 246 N. W. 9, 10.

■ The complaint must be and in this case was in writing. Defendant's plea of "not guilty" is all that is required in an action of this type to put in issue the allegations of the complaint, and is usually considered the equivalent of a general denial. Bartleson v. Munson, 105 Minn. 348, 353, 117 N. W. 512, 514. That case holds also that such action may be taken only against the individual who is in possession when the cause is brought.

■ The judgment in an unlawful detainer action determines only the right to the present possession and is not a bar to an action involving the title or the equitable rights of the parties. Such matters, including counterclaims, cannot be litigated in such action. Nor can such action be for the recovery of rent. William Weisman Holding Co. v. Miller, 152 Minn. 330, 188 N. W. 732. Our cases are cited in 4 Dunnell, Dig. & Supp. § 5448, under notes 15 and 16. And under this statute, original jurisdiction is confined to justice or municipal courts. State ex rel. Barge v. District Court, 53 Minn. 483, 55 N. W. 630.

■ As we have seen, the lease provided that the premises should not be sublet or assigned without the consent of the lessor expressed in writing on the back thereof. In Berryhill v. Healey, 89 Minn. 444, 446, 95 N. W. 314, 315, we held that such provision in the lease, absent consent as therein provided, makes a prima facie case for the plaintiff, since it is the specified method provided thereby; hence "when it was shown that that method had not been complied with, the burden shifted to the defendant to prove that consent had been given in some other manner." In this case, we find adequate proof that consent was given. The verdict so determining is adequately supported. 32 Am. Jur., Landlord and Tenant, § 341, and cases there cited. Furthermore, as we have heretofore held, an agreement providing that the lessee's assignment of

his lease cannot be made without the lessor's written consent thereto "is one inserted for the lessor's benefit, and he may waive the requirement of written consent by his conduct." Cohen v. Todd, 130 Minn. 227, 229, 153 N. W. 531, L. R. A. 1915E, 846. *Cf.* W. C. Hines Co. v. Angell, 188 Minn. 387, 247 N. W. 387, and O'Neil v. A. F. Oys & Sons, Inc. 216 Minn. 391, 394, 13 N. W. (2d) 8, 10. In this case, we have both oral assent as well as conduct on plaintiff's part sufficient to justify the verdict on that issue.

■ Next to be considered is plaintiff's claim that the court erred in permitting oral proof to the effect that the parties on July 14, 1942, after the original lease had been signed and delivered, agreed that the substituted securities could be applied at defendants' option to the payment of current rents. If this fund could be so used, there is no doubt that there was in fact no default as to this phase. As we have seen, plaintiff, on May 4, 1943, assigned these securities as collateral to his Minneapolis bank; payments were made to the bank from time to time so that either plaintiff or the bank as assignee has received, with these, an amount considerably in excess of $11,000. Obviously, the case largely hinged upon this issue. We have carefully reviewed the record and conclude that a fact issue was presented. The verdict is supported, we think, by competent proof.

■ Plaintiff has assigned many other errors in his brief. He relies heavily upon defendants' alleged failure to pay certain water rents to the city. These items are of little importance, since it appears that the water was never turned off. The jury could find, as it did, that defendants' contentions in this regard were well founded. Plaintiff's other assignments have been examined. Since the cause depended upon the two issues which we deem controlling, our conclusion is that these do not present anything requiring a new trial.

The judgment is affirmed.