UNIVERSITY COMMUNITY PROPERTIES, INC.
v. KATIE NORTON AND ANOTHER.

246 N. W. 2d 858.

October 29, 1976—Nos. 46153, 46199.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Richard M. Bisanz, William P. Studer,* and *Mary Ann Barrows,* for plaintiff.

*Smith, Juster, Feikema, Chartered,* and *Allen H. Gibas,* for defendants.

Heard before Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

These cases involve two unlawful detainer actions for nonpayment of rent. Plaintiff, University Community Properties, Inc. (hereinafter UCPI), sued tenants Katie Norton and Larry Glenn in Hennepin County Municipal Court. UCPI's motion for summary judgment was granted as to defendant Norton; its motion for partial summary judgment was denied as to defendant Glenn. Norton appealed to this court. On August 5, 1975, the trial court amended its order to certify the following question as doubtful and important:

"Given a binding agreement between a tenants' union and a landlord, can a landlord's alleged breach of the agreement be raised as a defense in an unlawful detainer action for non-pay-

ment of rent brought by that landlord against a member of the union not directly aggrieved by the landlord's breach?"

Pursuant to this certification, on September 2, 1975, UCPI appealed the denial of its motion for partial summary judgment against defendant Glenn. The cases were consolidated for hearing.

UCPI is a Minnesota corporation which at the times involved herein provided property management services to the landholding subsidiaries of Cedar Riverside Associates, Inc. Both Norton and Glenn have oral month-to-month leases with UCPI. In June 1974, UCPI sent tenants in over 400 units in the East and West Bank areas near the University of Minnesota notices of rent increases effective August 1, 1974. Each defendant received such a notice. Some tenants of UCPI then formed the West Bank Tenants Union (hereinafter WBTU) as an unincorporated association which has no formal charter, membership list, or elected officers. WBTU membership is not conditioned upon being a tenant of UCPI.

On August 1, 1974, members of WBTU began withholding rent from UCPI. On September 27, 1974, an agreement (hereinafter the "September Agreement") was reached between the two parties. The September Agreement modified the rent increases for current tenants according to a specified formula and contained a grievance procedure for tenants who thought that the formula rent increase was inequitable.

In December 1974, UCPI sent notices of rent increases effective March 1, 1975, to tenants in some of its newer apartment buildings. No notice was sent to Glenn or Norton. On March 2, 1975, members of WBTU voted to withhold rent from UCPI. UCPI filed unlawful detainer actions for nonpayment of rent in Hennepin County Municipal Court. Approximately 100 separate actions were commenced, including proceedings against Norton and Glenn. Glenn alleged both breaches of covenants of habitability and breaches of the September Agreement by UCPI as defenses. Norton alleged only the breach of the September

Agreement as a defense. Neither Glenn nor Norton had received rent increases nor been denied a grievance procedure regarding rent increases.

UCPI moved for summary judgment against Norton and for an order striking the defense asserted by Glenn of retaliatory eviction and granting release of withheld rent. In an order dated July 3, 1975, and amended on August 5, 1975, the court granted UCPI's motion with respect to Norton and denied its motion with respect to Glenn.

The issues presented are:

(1) Should an appeal be granted from an order directing entry of judgment?

(2) Is a landlord entitled to summary judgment where a tenant not directly aggrieved by the landlord's alleged breach of an agreement with a tenant's union raises such breach as a defense in an unlawful detainer action?

1. According to Minn. St. 566.12, an appeal is allowed only from the judgment of restitution and not from an order directing entry of judgment. Northwest Holding Co. v. Evanston, 265 Minn. 562, 122 N. W. 2d 596 (1963); Goldberg v. Fields, 247 Minn. 213, 76 N. W. 2d 668 (1956). However, this court has granted discretionary review under Rule 105, Rules of Civil Appellate Procedure, in the similar case of Fritz v. Warthen, 298 Minn. 54, 213 N. W. 2d 339 (1973). Because of the closely related issues in this suit, this court assumes jurisdiction in this case as well.

2. The governing statute in an unlawful detainer action is Minn. St. c. 566.[1] The purpose of the statute is to provide a sum-

---

[1] Minn. St. 1974, § 566.03 provides in part: "Subdivision 1. When any person holds over lands or tenements after a sale thereof on an execution or judgment, or on foreclosure of a mortgage and expiration of the time for redemption, or after termination of contract to convey the same, or after termination of the time for which they are demised or let to him or to the persons under whom he holds possession, or contrary to the conditions or covenants of the lease or agreement under which he holds, or after any rent becomes due according to the terms

22

mary proceeding to quickly determine the present right to posses-
sion of premises. In Leifman v. Percansky, 186 Minn. 427, 430,
243 N. W. 446, 448 (1932), this court observed:

"* * * Where the plaintiff [in an unlawful detainer proceed-
ing] shows defendant in possession under a lease, and failure
to pay the stipulated rent, his cause of action under the statute
is complete. * * * *The defenses that can be interposed are
strictly limited.*" (Italics supplied.)

In Fritz v. Warthen, *supra,* this court held that the unlawful
detainer statute was broad enough to allow a tenant to assert a
breach of the statutory covenants of habitability listed in Minn.
St. 504.18, subd. 1, as a defense. Minn. St. 504.18, subd. 1, re-
quires that a landlord covenant to keep leased premises in rea-
sonable repair, fit for their intended use, and maintained in com-
pliance with applicable health and safety laws.[2] The defendants

of such lease or agreement, or when any tenant at will holds over after
the determination of any such estate by notice to quit, in all such cases
the person entitled to the premises may recover possession thereof in
the manner hereinafter provided.

"Subd. 2. It shall be a defense to an action for recovery of premises
following the alleged termination of a tenancy by notice to quit for the
defendant to prove by a fair preponderance of the evidence that:

"(1) The alleged termination was intended as a penalty for the de-
fendant's good faith attempt to secure or enforce rights under a lease
or contract, oral or written, or under the laws of the state, any of its
governmental subdivisions, or of the United States; or

"(2) The alleged termination was intended as a penalty for the de-
fendant's good faith report to a governmental authority of the plain-
tiff's violation of any health, safety, housing or building codes or ordi-
nances."

[2] Minn. St. 504.18, subd. 1, provides: "In every lease or license of resi-
dential premises, whether in writing or parol, the lessor or licensor
covenants:

"(a) That the premises and all common areas are fit for the use in-
tended by the parties.

"(b) To keep the premises in reasonable repair during the term of
the lease or license, except when the disrepair has been caused by the

here contend that they should be allowed to assert as a defense a breach in a collective agreement between the tenants' union and their landlord which does not directly affect them. As statutory authority, they cite Minn. St. 566.07, which allows a defendant in an unlawful detainer proceeding to plead "all matters in excuse, justification, or avoidance of the allegations" in the complaint.

For the defense asserted here to be available: (1) The September Agreement must modify the oral leases so as to be part of the oral lease of each tenant; (2) such modification must be a dependent covenant with the covenant to pay rent in that lease; and (3) the breach of the dependent covenant set forth in the September Agreement must be the type recognized as a defense in an unlawful detainer action.[3]

As a threshold matter, it appears that the September Agreement did not modify the tenants' leases but only affected the amount of announced rent increases. There is no reference in the September Agreement to the oral month-to-month leases, and the agreement was entered into in a separate transaction between different parties. Neither is there evidence that the cove-

---

willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

"(c)  To maintain the premises in compliance with the applicable health and safety laws of the state and of the local units of government where the premises are located during the term of the lease or license, except when violation of the health and safety laws has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

"The parties to a lease or license of residential premises may not waive or modify the covenants imposed by this section."

[3] This reasoning is consistent with Fritz v. Warthen, 298 Minn. 54, 213 N. W. 2d 339 (1973). After finding the covenant to pay rent and the covenant of habitability to be dependent in that case, this court noted: "The mutual dependence of the statutory covenants of habitability and the covenant to pay rent does not, however, dispose of the question whether the breach of the statutory covenants is available as a defense in an unlawful detainer action." 298 Minn. 58, 213 N. W. 2d 341.

nant to pay rent and that agreement were dependent covenants. Contrary to defendants' argument, this court did not bury the doctrine of independent covenants in Fritz, but modified that doctrine regarding the covenant of habitability. We said:

"While we intimate no opinion as to the continued justification for the common-law rule of independent covenants in leases of modern urban dwellings, we do not believe the rule is applicable to the landlord's covenants of habitability imposed by Minn. St. 504.18. These covenants are not made part of the lease by agreement between the parties but by statutory mandate."[4] 298 Minn. 57, 213 N. W. 2d 341.

Defendants argue that landlord and tenant here intended that the covenants to pay rent and to establish a grievance procedure be dependent and cite Clark v. Clark, 164 Minn. 201, 204 N. W. 936 (1925), for the proposition that the dependence of the covenants is determined by the intent of the parties. The defendants here have not established, however, that the grievance procedure covenant was intended to modify the leases involved. Even if the parties intended the covenants to be dependent, there is no authority for finding that a breach of the covenant to establish a grievance procedure should be available as a defense in an unlawful detainer action.

While this court in Fritz v. Warthen, *supra*, permitted an assertion of breach of the warranty of habitability under the "excuse, justification, or avoidance" language of Minn. St. 566.07, this was because we held that the legislature, by enacting Minn. St. 504.18, expressly incorporated a warranty of habitability in every residential tenant's lease. No Minnesota statute incor-

---

[4] Those jurisdictions which have abandoned the doctrine of independent covenants have done so only in situations involving the implied warranty of habitability. Javins v. First Nat. Realty Corp. 138 App. D. C. 369, 428 F. 2d 1071, certiorari denied, 400 U. S. 925, 91 S. Ct. 186, 27 L. ed. 2d 185 (1970); Steele v. Latimer, 214 Kan. 329, 521 P. 2d 304 (1974); Lemle v. Breeden, 51 Hawaii 426, 462 P. 2d 470 (1969); Pines v. Perssion, 14 Wis. 2d 590, 111 N. W. 2d 409 (1961).

porates an agreement between landlord and tenant regarding grievance procedure in every residential lease; thus, there is no authority for permitting the breach of such an agreement to be asserted as a defense in an unlawful detainer proceeding.

Defendants cite William Weisman Realty Co. v. Cohen, 157 Minn. 161, 195 N. W. 898 (1923), for the proposition that any matter which without affirmative aid from a court would entitle the defendant to retain possession may be asserted in an unlawful detainer proceeding. This is an overbroad reading of Weisman. The defense which was asserted by the tenant there was the breach by the plaintiff of a contract for renewal of the lease. Such a defense related to the tenant's possession of the premises, whereas the defense of breach of grievance procedure does not.

Defendants look to the law of labor relations as an analogy to support their defense. It is true that collectively bargained agreements between landlord and tenant could be an important factor in stabilizing landlord-tenant relationships. The tenants' response bears a striking resemblance to early efforts by workers to adjust the employer-employee relationship, both in terms of the changes in the historical and socio-economic foundations of the relationship and in terms of the important public policies and interests to be served by giving legal recognition to the functional changes in that relationship. See, e. g., Note, 77 Yale L. J. 1368; Note, 23 U. Fla. L. Rev. 79; Bazarko, *Tenant Unions: Legal Rights of Members*, 18 Cleveland-Marshall L. Rev. 358. In the instant case, for example, the trial court had earlier upheld the validity of the September Agreement between the WBTU and UCPI, and the court recognized that members of the tenants' union were third-party beneficiaries of that agreement. However, a landlord has no duty to bargain with a tenants' union, and tenants do not have a statutory right to a collective bargaining relationship with the landlord. Defendants' argument that UCPI's breach of an agreement regarding grievance procedure vitiates the collective bargaining process, therefore, is unpersuasive. After an agreement has been reached with a

landlord, individual members of the union may be able to enforce the contract as third-party beneficiaries, but there is no language in the September Agreement stating that those who are not directly affected by a breach may assert the breach as a defense in an unlawful detainer action. The rights of the defendants are dependent upon the terms of the contract. 2 Williston, Contracts (3 ed.) § 364A.

To permit the defense asserted here by individual members of the tenants' union in an unlawful detainer action would require new legislation.[5] In such an extensive and important field affecting such a large percentage of our population and our basic economy, it is the legislature which can best determine the parameters of the rules to govern the parties' relations, preferably after holding extensive public hearings. Courts do not possess the facilities to undertake the task. Withholding rent under Minn. St. 566.03 is restricted to situations where the landlord has increased the rent or decreased services as a penalty for the tenant's act of reporting a violation of any health, safety, housing, or building code or ordinance. There is no statutory authority at this time permitting persons not directly affected by a breach of contract regarding tenant grievances to withhold rent because of the breach where the contract makes no reference to such a remedy.

The order granting summary judgment against defendant Norton is affirmed. The denial of partial summary judgment against defendant Glenn with respect to the defense of breaches of the September Agreement is reversed.

Affirmed in part; reversed in part.

---

[5] See, e. g., Moskovitz & Honigsberg, *The Tenant Union-Landlord Relations Act: A Proposal*, 58 Georgetown L. J. 1013.