William J. HOBEN, Respondent,

v.

CITY OF MINNEAPOLIS, Appellant.

No. 81–1138.

Supreme Court of Minnesota.

Aug. 31, 1982.

Robert J. Alfton, City Atty., Minneapolis, for appellant.

Edward J. Hance, Minneapolis, for respondent.

OTIS, Justice.

The issues raised in this appeal deal with reparation security statutes, Minn.Stat. §§ 65B.48, subd. 4 (1980), and 65B.61, subd. 2 (1980), as they apply to an employee of the City of Minneapolis injured in an automobile collision in the course of his employment. The trial court held that § 65B.61, subd. 2, did not limit respondent's right to stack workers' compensation benefits and no-fault benefits. We reverse.

On May 24, 1979, respondent Hoben, riding as a passenger in a truck owned by the appellant, was injured when the truck was rear-ended by another vehicle. He received workers' compensation benefits in excess of $200 and seeks in addition no-fault benefits for economic loss.

The appellant is a self-insurer and denies liability on the ground that it enjoys sovereign immunity under exceptions to Minn. Stat. § 466.02 (1980), which provides as follows:

TORT LIABILITY.

Subject to the limitations of sections 466.01 to 466.15, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.

1. The exception on which appellant relies is set forth in Minn.Stat. § 466.03, subds. 1 and 2, (1980) as follows:

Subd. 1. Scope. Section 466.02 does not apply to any claim enumerated in this section. As to any such claim every municipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability.

Subd. 2. Workers' compensation claims. Any claim for injury to or death of any person covered by the workers' compensation act.

■ We do not agree that appellant is entitled to immunity and hold that the trial court was correct in finding that Minn.Stat. § 65B.48, subd. 4, (1980) mandates municipalities to provide reparation security for economic loss benefits, in the following language:

The state of Minnesota or any agency thereof and any political subdivision of the state or agency thereof shall provide security by lawfully obligating itself to pay benefits in accordance with sections 65B.41 to 65B.71, either as a self-insurer pursuant to subdivision 3, or through purchase of a plan of reparation security.

2. A more difficult question is raised by the adoption of an amendment to Minn. Stat. § 65B.61, subd. 2, effective April 12, 1980. The trial court held that the amendment did not apply to an injury which occurred in May 1979, and that respondent was therefore entitled to the additional benefits with which we dealt in *Record v. Metropolitan Transit Commission*, 284 N.W.2d 542 (Minn.1979). Because the rule we there adopted was nullified by 1980 Minn.Laws, c. 539, and because Minn.Stat. § 65B.54, subd. 1 (1980), applies to future

payments for economic losses as they accrue, we hold that the amendment to § 65B.61 applies after April 12, 1980 to respondent's combined benefits, and reverse.

The *Record* case, decided in October 1979, construed the interaction between §§ 65B.44, subd. 3 (1980) and 65B.61, subd. 1 and 2 (1978), dealing with no-fault benefits, to permit workers' compensation to be subtracted from the employee's gross weekly wage, and not from the $200 a week maximum prescribed in § 65B.44, subd. 3. The effect of that rule was to allow benefits totaling about 95% of the employee's previous gross.

The legislature reacted at the next session of the legislature by amending § 65B.61, subd. 1 and 2, to prevent stacking of no-fault and workers' compensation benefits in excess of $200 a week. 1980 Minn. Laws, c. 539 §§ 2 and 3. That amendment now provides:

Subd. 1. Basic economic loss benefits shall be primary with respect to benefits except for those paid or payable under a workers' compensation law or medicare, which any person receives or is entitled to receive from any other source as a result of injury arising out of the maintenance or use of a motor vehicle. Where worker's compensation or medicare benefits paid or payable are primary, the reparation obligor shall make an appropriate rebate or reduction in the premiums of the plan of reparation security. The amount of the rebate or rate reduction shall be not less than the amount of the projected reduction in benefits and claims for which the reparation obligor will be liable on that class of risks. The projected reduction or rebate in benefits and claims shall be based upon sound actuarial principles.

Subd. 2. If benefits are paid or payable under a workers' compensation law because of the injury, no disability income loss benefits are payable unless the weekly workers' compensation disability benefits are less than the weekly disability benefit as set out in section 65B.44,

subdivision 3, in which case the reparation obligor shall pay to the injured person the amount that the weekly disability and income loss benefits payable under section 65B.44, subdivision 3, exceeds the weekly workers' compensation disability benefits.

■ Because of the clear language of § 65B.54, subd. 1, we hold that it was the intent of the legislature to deal prospectively with future payments of all basic economic loss benefits, regardless of when the accident or incident giving rise to the claim occurred. Insofar as it is here relevant the statute provides: .

> Basic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as income loss, replacement service loss, survivor's economic loss, survivor's replacement services loss, or medical or funeral expense is incurred. * * *

Under that statute economic loss benefits are payable as the *loss* occurs, not when the *injury* occurs. Here, of course, the loss does not occur until each month arrives when the employee remains unable to return to gainful employment equivalent to what he previously enjoyed. Where, as here, there is little doubt but that the legislature's prompt reaction to our construction of the applicable statutes indicates not a change in legislative policy but a disagreement with our understanding of the legislative intent in initially adopting the statutes, it is not a question of retroactivity but more nearly akin to a clarification. In any event the language of § 65B.54 is unequivocal in treating the loss as accruing when it is incurred and not when the injury occurs. That was the law when this employee was injured, and our decision in *Record,* now nullified, did not confer a vested right by our interpretation of legislative purpose. The losses which the respondent suffered after April 12, 1980, are therefore governed by the law in effect from and after that date. .

Affirmed in part, reversed in part.