E. Jerome CARLSON, Respondent,

v.

J. Ralph LILYERD, et al., Appellants.

J. Ralph LILYERD, et al., Appellants,

v.

E. Jerome CARLSON, Production
Credit Association of St. Cloud,
Respondents.

No. CX–89–1071.

Court of Appeals of Minnesota.

Dec. 19, 1989.

Review Denied March 8, 1990.

Lawrence R. Johnson, Daniel D. Ganter, Jr., Steffen & Munstenteiger, Anoka, for E. Jerome Carlson.

James L. Wiant, Rinke–Noonan, St. Cloud, for Production Credit Ass'n of St. Cloud.

Ronald R. Frauenshuh, Jr., Ortonville, for appellants.

Heard, considered and decided by FORSBERG, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

The trial court concluded that a statute requiring an offer of first refusal to the immediately preceding former owner of agricultural land when that land is sold did not apply to the instant case, and that appellants were not "the immediately preceding former owners" of certain agricultural land under that statute. Appellants allege both conclusions are error. In light of a recent statutory amendment and an insufficient record, we remand.

## FACTS

In 1973 Big Meadow Ranch, Inc., a Minnesota corporation of which appellant J. Ralph Lilyerd was president and a shareholder and appellant Christel Lilyerd was secretary and a shareholder, executed a mortgage to Travelers Insurance Company on farm property owned by Big Meadow. Subsequently, Big Meadow executed mortgages to the Production Credit Association (PCA) in 1977 and 1982. All mortgages were secured by the same land.

In 1984 Big Meadow encountered financial difficulties. A Chapter 11 bankruptcy proceeding was initiated in January, 1985, which was subsequently converted to a Chapter 7 proceeding in August of that year. Bankruptcy proceedings were closed in February, 1986.

Upon Big Meadow's default on the first mortgage, Travelers foreclosed on the property. At the April 11, 1986 foreclosure sale, which all parties agree was appropriately conducted, Travelers was the high bidder.

On April 8, 1987, respondent E. Jerome Carlson acquired PCA's interests in the property. The next day Carlson recorded his acquisitions as well as his notice of intent to redeem the property in place of PCA. When Big Meadow had not attempted to redeem the property within one year

of the foreclosure sale, Carlson did, and filed certificates of redemption on April 15 and May 6, 1987.

In February, 1988, Carlson initiated an unlawful detainer action against Big Meadow and the Lilyerds. After a March 1988 hearing, the trial court found that "the foreclosure proceedings were regular in all respects and fully complied with the requirements of [the statute]" and that "Carlson is entitled to immediate possession of the [p]remises."

On July 19, 1988, the Lilyerds sued Carlson and PCA alleging that they had been denied their statutory right of first refusal as the "immediately preceding former landowner." Subsequently, Carlson started a separate action against the Lilyerds and Big Meadow alleging that neither had an interest in the property. Carlson moved for a judgment on the pleadings in his action based on the results of the unlawful detainer action. A hearing on Carlson's motion, on the Lilyerds' motion to consolidate the files, and on the PCA's motion to dismiss the Lilyerds' complaint in their action, was heard March 17, 1989. At that hearing the parties agreed to consolidation of the files. Subsequently, in separate findings and conclusions, the trial court ordered judgment for Carlson in his action, stating that neither the Lilyerds nor Big Meadow were the immediately preceding former owners of the land. The trial court also dismissed the Lilyerds' action with prejudice, stating that the statute granting the right of first refusal was inapplicable to the Lilyerds' case and that the Lilyerds failed to state a claim upon which relief could be granted.

## ISSUES

1. Did the Lilyerds or Big Meadow have standing to seek relief under Minn.Stat. § 500.24, subd. 6?

2. Is Minn.Stat. § 500.24, subd. 6 applicable to this case?

3. Were the Lilyerds denied a right of first refusal under Minn.Stat. § 500.24, subd. 6?

## ANALYSIS

Carlson, in his suit against the Lilyerds and Big Meadow, moved for "an order granting judgment on the pleadings * * * pursuant to Rule 12.03 of the Minnesota Rules of Civil Procedure." The Lilyerds, as plaintiffs in their case against Carlson and PCA, moved to consolidate the files. The trial court made its findings and conclusions and issued its orders

[u]pon the evidence adduced at the hearing, the files, records and proceedings herein *and the Findings of Fact, Conclusions of Law and Order for Judgment* in [the prior unlawful detainer action].

(Emphasis added.)

■ Because this case involves a motion for judgment on the pleadings where more than just the pleadings were considered, we review the trial court's determinations under a summary judgment standard. *See* Minn.R.Civ.P. 12.03; *Hofstad v. Hargest,* 412 N.W.2d 5, 7 (Minn.Ct.App.1987).

On appeal from a summary judgment it is the function of [an appellate] court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979); Minn.R. Civ.P. 56.03. Additionally, "the nonmoving party has the benefit of that view of the evidence which is most favorable to him." *Sauter v. Sauter,* 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955), *quoted in Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Finally, "the moving party has the burden of proof." *Hofstad,* 412 N.W.2d at 7.

### I.

Although questioned by the trial court, the issue of whether either the Lilyerds or Big Meadow had standing to seek relief under Minn.Stat. § 500.24, subd. 6 was not addressed by the parties. We address it now to facilitate our consideration of the merits of the appeal.

The trial court apparently recognized that the Lilyerds, in their action against Carlson and PCA, had not included as a

named party Big Meadow, the mortgagor of the property in question. The trial court stated:

The issue of whether [the Lilyerds] have standing to complain [about denial of a right of first refusal] cannot be resolved by motion since [the Lilyerds'] status appears to involve questions of fact.

■ We conclude that the trial court's concern was unnecessary. The Lilyerds' complaint states the record owner of the land to be Big Meadow but specifically notes that

[Big Meadow] was owned by and controlled by the individual plaintiffs [and] that the plaintiffs were the real parties in interest

\* \* \* \* \* \*

Thus the Lilyerds, in their action, did claim rights in the name of Big Meadow.

Under the rules of civil procedure

When actions involving a common question of law or fact are pending before the court, * * * it may order all the actions consolidated.

Minn.R.Civ.P. 42.01; *see also* Minn.R.Civ.P. 21. Rule 42.01 "is a flexible rule and * * * the procedure it contemplates is permissive and rests with the discretion of the trial court." *Shacter v. Ricter,* 271 Minn. 87, 92, 135 N.W.2d 66, 70 (1965). Further,

The fact that the dimensions of the separate actions may not be in all respects the same does not prevent consolidation if there exists between them the "common question of law or fact."

1. We are aware that in *Shacter v. Ricter,* 271 Minn. 87, 89, 135 N.W.2d 66, 68 (1965) the suits were not merged into a single action and that the parties to one action did not become parties to the other. However, this factor is not determinative in the instant case. Initially, unlike *Shacter,* which involved two separate auto accidents over three years apart, *id.,* 271 Minn. at 88, 135 N.W.2d at 67, the issues in this case arise out of the same "transaction or occurrence." More importantly, PCA, as the party not involved in a suit with Big Meadow as a named party, was the only party whose interests could possibly have been harmed by the consolidation. However, counsel for PCA explicitly stated that there was "no objection to consolidation [of the files] assuming that there are claims against PCA."

*Shacter,* 271 Minn. at 92, 135 N.W.2d at 69. Therefore, "in granting a motion to consolidate, the trial court must balance convenience against the possibility of prejudice." *Id.,* 271 Minn. at 93, 135 N.W.2d at 70. The question common to both trial court actions was the nature of Carlson's title in light of the possible denial of a statutory right of first refusal.[1] Because of this common question and because the parties agreed to consolidate, prejudice is not a concern. Thus, we conclude that the trial court properly exercised its discretion in consolidating these files. *See Schacter,* 271 Minn. at 92, 135 N.W.2d at 70 ("Since there is a fact question common to both actions, we cannot say that under the rule the trial court exceeded its power in making its order for consolidation"). As a result of the consolidation, the potential standing problems occasioned by Big Meadow's absence from the Lilyerds' suit as a named party were eliminated.[2]

II.

By statute,

A state or federal agency or a corporation * * * when leasing or selling farm land * * * must offer * * * [the] land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor. * * * This subdivision does not apply if the former owner is a bankruptcy estate.

Minn.Stat. § 500.24, subd. 6 (1986).[3] Here, Travelers was the high bidder at the fore-

2. We note that our conclusion is consistent with the pleadings filed in Carlson's action which indicate agreement regarding Big Meadow's nature and involvement in that action. Carlson's complaint alleges "[Big Meadow] * * * *is* a corporation organized and *existing* under the laws of Minnesota" (emphasis added) while the answer and counterclaim similarly states that this allegation "*is* admitted and qualified by saying that [Big Meadow] *is* a family farm corporation * * *." (Emphasis added.)

3. Because Minn.Stat. § 500.24, subd. 6 (1986) was effective on March 22, 1986, *see* 1986 Minn. Laws ch. 398, art. 20, § 2, it was in force at the time of the April 11, 1986, foreclosure sale.

closure sale. After the sale, Big Meadow had one year to exercise its right of redemption and PCA as a junior lienholder also had a period during which it could redeem the property. *See* Minn.Stat. §§ 580.23, subd. 2(c), 580.24 (1984).

A. *Applicability of First Refusal Statute*

In dismissing the Lilyerds' case, the trial court stated:

> Minnesota Statute Section 500.24 clearly and unambiguously applies only to a sale or lease of agricultural real estate. Under long established Minnesota law, a mortgage is not an interest in real estate. Minnesota Statutes Section 559.17; *Petition of SRA, Inc.*, 213 Minn. 487, 7 N.W.2d 484, 488 (Minn.1943); *Niggeler vs. Maurin*, 23 Minn. 118, 24 N.W. 369 (Minn.1885). *It is the conclusion of the Court that this statute does not apply to an assignment of a mortgage.*

(Emphasis added). We disagree with the conclusion of the trial court. By its language, the first refusal statute applies upon the "leasing or selling" of agricultural real estate. The trial court cited Minn.Stat. § 559.17, subd. 1 for the proposition that PCA's assignment of its interest was not the assignment of an interest in real estate and therefore not covered by the first refusal statute. Under Minn.Stat. § 559.17, subd. 1 (1984):

> A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property *without a foreclosure*, except as provided in subdivision 2 [regarding assignment of rents and profits].

(Emphasis added.) This statute limits its own applicability to situations not involving a foreclosure.

This case involves a foreclosed first mortgage and the post foreclosure assignment of a junior lienholder's interest in the property.

The purpose of a mortgage foreclosure sale * * * is "to terminate all interests

junior to the mortgage being foreclosed and to provide the sale purchaser with a title identical to that of the mortgagor as of the time the mortgage being foreclosed was executed."

*Gerdin v. Princeton State Bank*, 384 N.W.2d 868, 871 (Minn.1986) (quoting G. Osborn, G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.19 (1979)). Thus,

> By not exercising its right of redemption [a junior lienholder's] interest in the subject property * * * is forfeited.

*Community Ins. Agency, Inc. v. Kemper*, 426 N.W.2d 471, 474 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Sept. 16, 1988).

■ Logically, the only reason for Carlson to acquire PCA's junior lienholder's interest, i.e. the right to redeem the property, would be to exercise that right and acquire the property. If he failed to redeem or did not plan to do so, Carlson would have obtained PCA's interest only to subsequently forfeit it.[4] The purpose clause for the statute requiring the first refusal offer states:

> The legislature finds that it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to ensure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 1 (1984); *see also* Minn.Stat. § 500.24, subd. 1 (1988). This statutory purpose, combined with the fact that PCA's assignment of its junior lienholder's interest is an indication that neither the party enforcing its lien nor the farmer is ultimately going to receive the land, leads us to conclude that the statute's language requiring an offer of first refusal to be made upon a sale or lease is broad enough to require that the same offer be made when a junior lienholder assigns its interests in the property. *See Harbal v. Federal Land Bank*, 449 N.W.2d 442, 447 (Minn.Ct.App.1989) ("A nar-

---

4. Should the land subsequently be redeemed from the junior lienholder's assignee, the assignee, as the holder of what had been a mortgage interest senior to that of the party redeeming the property, would then be paid the value of those mortgage rights by the party redeeming the land. *See* Minn.Stat. §§ 580.24, 580.27 (1984).

row, constricted reading of the statute would circumvent its purpose by allowing lending corporations which acquire an interest in agricultural property by the enforcement of a debt to transfer the property without first offering to sell it to the foreclosed owners. Such a result is inconsistent with the remedial objectives of Minn.Stat. § 500.24"). To conclude otherwise would frustrate the statute by allowing third parties to acquire what had been a family farm without the family farmer being given a right of first refusal per the statute.[5] In light of the statute's stated policy of favoring family farm entities, we believe that our interpretation of the first refusal provision is consistent with the idea that "[t]he objective of all [statutory] interpretation and construction is to ascertain *and effectuate* the intention of the legislature," Minn.Stat. § 645.16 (1984) (emphasis added) as well as the idea that "[t]he legislature intends [an] *entire statute* to be effective and certain." Minn.Stat. § 645.17(2) (1984) (emphasis added).

## B. *Definition of Immediately Preceding Former Owner*

The trial court also concluded that Travelers was the immediately preceding former owner and therefore an offer of first refusal did not have to be made to either Big Meadow or the Lilyerds. Again, we disagree with the trial court's conclusion.

The statute in effect at the time the PCA assigned its interest as a junior lienholder to Carlson contained no definition of "immediately preceding former owner." *See* Minn.Stat. § 500.24, subd. 6 (1986).

Under the current statutory language "only a family farmer, family farm corporation, or family farm partnership can be an immediately preceding former owner." *See* Minn.Stat. § 500.24, subd. 6(b) (Supp. 1989).[6]

Generally,

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

Minn.Stat. § 645.21 (1986). However, the idea that a law is to be applied only prospectively is not "an immutable proposition." *State by Spannaus v. Coin Wholesalers, Inc.*, 311 Minn. 346, 354, 250 N.W.2d 583, 588 (1976). Specifically, "a clarifying act is to be read into statutory law retrospectively." *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn.1987). *See also Holman v. All Nation Ins. Co.*, 288 N.W.2d 244, 251 (Minn.1980) ("because the act * * * was designed to "clarif[y] certain ambiguous provisions" * * * [the] amendment may be read into * * * [the] section [retrospectively]"); *Spannaus*, 311 Minn. at 354, 250 N.W.2d at 588 ("when the language of an amendatory statute is intended

---

5. To the extent that Carlson may argue that the outcome of his unlawful detainer action requires the conclusion that he is entitled to the property, we note that the supreme court has stated:

> The judgment in an unlawful detainer action determines *only* the right to the *present* possession and is not a bar to an action involving the title or the equitable rights of the parties. Such matters, including counterclaims, cannot be litigated in such action.

*Keller v. Henvit*, 219 Minn. 580, 585, 18 N.W.2d 544, 547 (1945) (emphasis added). *See also University Community Properties, Inc. v. Norton*, 311 Minn. 18, 21–22, 246 N.W.2d 858, 860 (1976). Because of the limited nature of the unlawful detainer judgment, we are not persuaded that it in any way affects the determination of the Lilyerds' and Big Meadow's rights under the first refusal statute.

6. An original definition was added to the statute in 1988, *see* 1988 Minn.Laws ch. 700, § 1; however, the quoted portion of that definition was added in June 1989 after the trial court issued

its decisions in this matter. Arguably the trial court's conclusion that Travelers was the immediately preceding former owner was consistent with the then existing case law interpreting the existing statute. *See Travelers Ins. Co. v. Norwest Bank Rochester*, 706 F.Supp. 695, 697 (D.Minn.1989). We note, however, that in *Travelers* the concerned parties were two banks. No family farmer or family farm corporation or partnership was involved in that case. Therefore, given the legislature's explicitly enacted statutory purpose of "encourag[ing] and protect[ing] the family farm as a basic economic unit [and] to ensure it as the most socially desirable mode of agricultural production," Minn.Stat. § 500.24, subd. 1 (1984), we cannot automatically conclude that because a bank may be an immediately preceding former owner *relative to another bank*, a bank may also be an immediately preceding former owner relative to the very family farm entities the statute was designed to protect.

to clarify * * * the presumption [of prospective application] is rebutted").

 The preambles to the acts retrospectively applied in *Nardini* and *Holman* both explicitly labeled the amendments as "clarifying acts"; *see* preamble to 1985 Minn. Laws ch. 266 ("An act * * * *clarifying* factors to consider in awarding maintenance * * *") (emphasis added); preamble to 1977 Minn.Laws ch. 266 ("An act * * * *clarifying* certain ambiguous provisions * * *") (emphasis added). However, such prefatory language is not the sine qua non of a clarifying amendment.

The preamble to the act construed in *Spannaus* did not specifically state that the amendment in question was to "clarify" existing law. *See* preamble to 1975 Minn. Laws ch. 371. There, the supreme court concluded that an amended definition's specific inclusion of certain items within the statute's ambit, despite their previous absence, was only a clarification. *See Spannaus*, 311 Minn. at 353–54, 250 N.W.2d at 587–88.

Similarly in *Hoben v. City of Minneapolis*, 324 N.W.2d 161, 162–63 (Minn.1982) the preamble to the interpreted amendment did not include a specific designation of the act in question as a clarification. *See* preamble to 1980 Minn.Laws ch. 539. Prior to *Hoben* the supreme court held that certain insurance benefits could be stacked. *See Record v. Metropolitan Transit Commission*, 284 N.W.2d 542 (Minn.1979). Subsequently, the statute interpreted in *Record* was amended. *See* 1980 Minn. Laws ch. 539. Based on the observation that

[after our ruling in *Record*] the legislature reacted at the next session of the legislature by amending [the statute] to prevent stacking of [the benefits],

*Hoben*, 324 N.W.2d at 162, the supreme court concluded:

Where, as here, there is little doubt but that the legislature's prompt reaction to our construction of the applicable statutes indicates not a change in legislative policy but a disagreement with our understanding of the legislative intent in initially adopting the statutes, it is not a question of retroactivity but more nearly akin to a clarification.

*Id.* at 163.

This case is parallel to *Spannaus* and *Hoben* in that neither of the acts defining "immediately preceding former owner" contains the clarification designation found in *Nardini* and *Holman*. *See* preamble to 1989 Minn.Laws ch. 350; preamble to 1988 Minn.Laws ch. 700.

 Further, in *Travelers Insurance Co. v. Norwest Bank Rochester*, 706 F.Supp. 695, 697 (D.Minn.1989) it had been argued to the trial court "that the phrase 'immediately preceding former owner' [in Minn.Stat. § 500.24, subd. 6] should be interpreted to exclude financial institutions." The trial court, however, ruled

The statute does not permit [that] interpretation * * *. The language unambiguously requires notice to the immediately preceding former owner, not the last family farmer. The statute is unambiguous and not subject to interpretation * * *. Section 500.24, subd. 6(b) as it has been amended in 1988 defines the immediately preceding former owner as "the *entity* with record legal title * * * before acquisition by [the corporation currently offering the land for sale] * * *" (emphasis added). The legislature therefore has considered that at times farm land is owned by other than family farmers, and chose not to make exceptions to the clear meaning of "immediately preceding former owners," except for bankruptcy estates.

*Id.* (citations omitted) (emphasis in original). *Travelers* was decided February 23, 1989. On June 2, 1989 the governor signed the bill including the provision precluding anyone other than a family farm entity from being immediately preceding former owners under the first refusal statute. Such an immediate legislative response to the *Travelers* decision suggests to us, as it did to the supreme court in *Hoben*, that application of the amendment "is not a question of retroactivity but more nearly akin to a clarification," *Hoben*, 324 N.W.2d at 163, and therefore applicable in this case. We note that logically, defining a

term that has already been used in a statute for several years should clarify rather than substantively change that statute. Thus, we conclude that the amendment limiting immediately preceding former owners to farm entities was only a clarification of the statute. Its retrospective application is proper under *Nardini, Holman* and *Spannaus* and therefore Travelers could not have been the immediately preceding former owner in this action.

### III.

When PCA assigned its interests to Carlson, provisions of the first refusal statute then in effect made it inapplicable "if the [immediately preceding] former owner is a bankruptcy estate." Minn.Stat. § 500.24, subd. 6 (1986). A party otherwise subject to this statute would have no obligation to make a first refusal offer if the immediately preceding former owner was a bankruptcy estate. However, the statutory language presently in effect states "if the immediately preceding former owner is a bankruptcy estate, the debtor in bankruptcy is the immediately preceding former owner." *See* Minn.Stat. § 500.24, subd. 6(b) (Supp.1989). Therefore, a party subject to the present version of the statute has the obligation of making a first refusal offer to certain immediately preceding former owners where there specifically was no such duty in the earlier statute. Imposition of this formerly nonexistent duty constitutes a substantive change in the statute. As such, the present statute cannot be retrospectively applied unless there is clear evidence that the legislature intended retroactive application. We have not been provided with, nor have we discovered, such evidence of intent. Thus, the transaction in this case is subject to Minn.Stat. § 500.24, subd. 6 as it existed in 1986, including its then implicit, but later explicit, idea that only family farm entities can be immediately preceding former owners. Therefore, if the immediately preceding former owner here was a bankruptcy estate, the first refusal offer need not have been made.[7]

Because Big Meadow, the owner and mortgagor of the property, entered bankruptcy, and because a bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the bankruptcy action, *see State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 774 (8th Cir.1981), Big Meadow's interest in the property could have been acquired by its bankruptcy estate. In the trial court the parties disagreed regarding the nature and implications of the bankruptcy proceedings. The record before us does not address the results of the bankruptcy proceedings in sufficient detail to permit adequate review of this issue. We must remand to enable the trial court to conduct appropriate proceedings to enable it to determine what effect, if any, Big Meadow's bankruptcy had upon ownership of the land in question.

If on remand the trial court determines that the immediately preceding former owner on the date of PCA's assignment of its interests to Carlson was, in fact, a bankruptcy estate, Minn.Stat. § 500.24, subd. 6 is inapplicable and no right of first refusal offer need be made. However, if the trial court determines that the immediately preceding former owner was a family farm entity, then PCA had a duty to tender a right of first refusal offer to that entity and the failure to do so violated the statute.

In view of our resolution of the appeal, we deny Carlson's request for attorney fees.

---

**7.** We note the dissent's concern that our retrospective application of the amendment to the first refusal statute precluding all but family farm entities from being immediately preceding former owners seems "internally inconsistent" with our refusal to retrospectively apply the bankruptcy provision. The alleged inconsistency, however, presupposes that the preclusion is a substantive change in the statute. It is with this underlying presumption that we disagree.

Logically, for an amendment to be a statutory "clarification," it must clarify something *already in the statute* which here was the recognition that family farm entities were the subjects of the statute's protection. Such an application of the statute's protection is qualitatively different from requiring a party to comply with the new duty imposed by the amended bankruptcy provision.

## DECISION

While the first refusal statute is applicable to the instant case and while appellants have standing to seek relief under the recent retrospectively applicable amendment to that statute, the record before this court regarding Big Meadow's bankruptcy is insufficient to allow a conclusion regarding whether appellants were denied their right of first refusal. Therefore we remand for resolution of this issue.

Remanded.

FORSBERG, Judge (dissenting):

I respectfully dissent. While I agree the first refusal statute applies to the PCA's assignment of its interest to Carlson, I disagree with the majority's conclusion that Travelers cannot be the "immediately preceding former owner."

When Carlson acquired the PCA's interest in the property in April 1987, the statute provided in pertinent part:

Disposal of land. A state or federal agency or a corporation, other than a family farm corporation or an authorized farm corporation, when leasing or selling farm land or a farm homestead, must offer or make a good faith effort to offer land for sale or lease to the *immediately preceding former owner* at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor. * * * This subdivision does not apply if the former owner is a bankruptcy estate.

Minn.Stat. § 500.24, subd. 6 (1986) (emphasis added).

In 1988, the language of the statute was changed substantially. *See* 1988 Minn. Laws ch. 700, § 1. In particular, the following definitional subsection was added:

An immediately preceding former owner is the entity with record legal title to the agricultural land or farm homestead before acquisition of the state or federal agency or corporation except: if the immediately preceding former owner is a bankruptcy estate, the debtor in bankruptcy is the immediately preceding former owner; and if the agricultural land or farm homestead was acquired by ter-

mination of a contract for deed or deed in lieu of termination of a contract for deed, the immediately preceding former owner is the purchaser under the contract for deed.

Minn.Stat. § 500.24, subd. 6(b) (1988).

Subdivision 6(b) was changed again in 1989 by the addition of the following sentence: "For purposes of this subdivision, only a family farm, family farm corporation, or family farm partnership can be an immediately preceding former owner." *See* 1989 Minn.Laws ch. 350, art. 16, § 1.

The majority concludes because this 1989 amendment was only a clarification of the statute, retrospective application is proper. I disagree for several reasons.

1. The 1986 version of the statute contains no definition of "immediately preceding former owner," other than to make an exception if the former owner is a bankruptcy estate. Its language is clear and unambiguous, and merely requires notice be given to the immediately preceding former owner. At the time it assigned its interests to Carlson, the PCA was thus under no obligation to extend a right of first refusal to anyone other than Travelers.

The necessity for a clarification implies the original version of the statute was somehow unclear or ambiguous. As noted above, however, the language of the 1986 statute is unambiguous. Any subsequent amendment must therefore be viewed as a change in the statute, not a clarification.

2. The majority contends prefatory language labeling an amendment as a "clarifying act" is not essential to a determination the amendment is a clarification. In support of this proposition, the majority cites two cases involving amendments which did not include preambles designating the act as a clarification. Its reliance on those cases, however, is misplaced.

The majority first cites *State by Spannaus v. Coin Wholesalers, Inc.*, 311 Minn. 346, 250 N.W.2d 583 (1976). In *Spannaus*, the supreme court reasoned

the *inclusion* of the term 'investment metal contract' [by the 1975 legislature]

in the comprehensive definition of 'security' contained in [the 1974 version of the statute in question], was more likely intended as a legislative clarification than as a subsequent addition.

*Id.* at 354, 250 N.W.2d at 588 (emphasis added). The 1974 definition of "security" included in its long list "investment contract." Thus, the term "investment metal contract" would have arguably fit even under that original definition. The subsequent inclusion of that term within the definition of "security" merely confirmed or clarified this type of document as intended by the legislature to have been a "security" all along.

Moreover, *Spannaus* involved interpretation of a subsequent amendment which *broadened* a statutory definition. In this case, we are dealing with interpretation of an amendment which *narrows* a statutory term. The 1989 amendment to the first refusal statute excludes entities from the statute's ambit by limiting the phrase "immediately preceding former owners" to farm entities. This exclusionary language effectively imposes a new duty upon a party to notify the "immediately preceding former owner" who is also a farm entity. Statutory amendments which attach a new obligation to a transaction or affect substantial rights should not be deemed retroactive. *See* Minn.Stat. § 645.21 (1986) (presumption exists against giving laws retroactive effect).

The majority also cites *Hoben v. City of Minneapolis*, 324 N.W.2d 161 (Minn.1982). *Hoben* dealt with interpretation of a 1980 amendment preventing stacking of no-fault and workers' compensation benefits in excess of $200 a week. As the majority here emphasizes, the supreme court concluded the amendment was "more nearly akin to a clarification" rather than a change in the law. *Id.* at 163. The supreme court did so, however, to reach the conclusion that it was the intent of the 1980 legislature to deal *prospectively* with future benefit payments, regardless of when the injury occurred. Thus, the court held the 1980 amendment preventing stacking of benefits was applicable only to benefits received after the effective date of that amendment.

The court did *not* retroactively apply the amendment to payments received before that date.

3. After retrospectively applying the 1989 version of the statute, the majority concludes Travelers could not have been the immediately preceding former owner in this action. The majority then goes on, however, to find the transaction subject to the 1986 version of the statute; as such, it concludes the statute is inapplicable if the immediately preceding former owner was a bankruptcy estate.

These two conclusions are internally inconsistent. The majority appears to advocate selective retroactive application of statutory amendments. All of the amendments at issue here involve portions of the statute dealing with the definition of "immediately preceding former owner." The majority's attempt to apply one version of the statute for one purpose and another version for another purpose is incongruous.

4. I would follow the reasoning of Judge Murphy in *Travelers Insurance Co. v. Norwest Bank Rochester*, 706 F.Supp. 695, 697 (D.Minn.1989), and conclude the 1986 version of the first refusal statute is unambiguous and requires "notice to the immediately preceding former owner, not the last family farmer."