CHARLES ANDERSON and Others v. LUTHER MINING COMPANY and Others.[1]

November 9, 1897.

Nos. 10,624—(9).

Mining Lease—Specific Performance—Laches—Change of Circumstances.

> Diligence is required of one who seeks equitable relief, such as specific performance of a contract, for if, through unnecessary and unexplained delay, the value of the property involved has greatly increased or the circumstances have changed, so that an injustice will be done to allow such equitable relief, it will not be granted.

Same—Waiver by Abandonment.

> So, if a party seeking relief has failed to assert his claim and has permitted others to go into possession, and in any manner greatly increase or add to the value of the property, while he has stood by in silence, he must be deemed to have waived and lost his equitable interests.   And he may also waive and lose these rights by abandonment.

Same—Evidence.

> *Held*, upon such findings of fact in this case as were supported by the evidence, that the plaintiffs were not entitled to relief as against defendants.

Appeal by plaintiffs from an order of the district court for St. Louis county, Ensign, J., denying their motion for a new trial.   Affirmed.

*Cotton, Dibell & Reynolds*, for appellants.

If the deed was not absolutely delivered so as to be the property of the grantee, specific performance will be decreed for its delivery. Hathaway v. Payne, 34 N. Y. 92.   See, also, Switzer v. Gardner, 41 Mich. 164;  Wood, Landl. & T. § 236.   Actions may be instituted in courts of equity for the determination of primary rights alone, in-

[1] Reported in 72 N. W. 820.

volving no ultimate remedy, and forming only the basis of some prospective action. 3 Pomeroy, Eq. Jur. § 1375; Switzer v. Gardner, supra. Such relief may be granted a vendor even where the property involved has been sold. Smith v. Gibson, 15 Minn. 66 (89); 3 Pomeroy, Eq. Jur. § 1400. If the recovery of possession of the instrument were the only purpose of the action, it would be properly an equity case. Knopf v. Hansen, 37 Minn. 215. All causes of action, whether legal or equitable, growing out of the same transaction, may be united. Abbott, Trial Brief, §§ 422, 424. Such has been the rule in this state ever since the adoption of code practice. Mitchell v. Bank, 7 Minn. 192 (252); Montgomery v. McEwen, 7 Minn. 276 (351); Ermentrout v. American, 60 Minn. 418.

The lessee, Brandin, having surrendered his interest in the premises could not be a proper party plaintiff, but was properly made a party defendant, but the objection, having been raised neither by demurrer nor answer, is waived. Moore v. Bevier, 60 Minn. 240. Plaintiffs and Brandin were joint lessees, jointly and severally liable, and, as between themselves, under the doctrine of "equitable conversion," the leasehold interest was personal property. Day v. Perkins, 2 Sandf. Ch. 359. Such is the rule notwithstanding the estate may have been conveyed to the partners by such deed as would at law make them tenants in common. Arnold v. Wainwright, 6 Minn. 241 (358). All the partners' dealings with the leasehold interest were, therefore, dealings with personal property. Boynton v. Page, 13 Wend. 425; Woodward v. Nudd, 58 Minn. 236. The substitution of partners, ipso facto, transfers the title of the partnership property from the old to the new firm. Pease v. Rush, 2 Minn. 89 (107). The retirement of Brandin did not work a dissolution or change the leasehold to real estate, the partnership being a mining partnership. Mining Partn., 17 Am. & Eng. Enc. 868; Skillman v. Lachman, 23 Cal. 199. Upon dissolution of partnership real estate ceases to be personalty. Foster's Appeal, 74 Pa. St. 391; Denver v. Roane, 99 U. S. 355; Rhea v. Tathem, 1 Jones Eq. (N. C.) 290. Tenants in common may divide partnership land by parol agreement. Wood v. Fleet, 36 N. Y. 499; Conkling v. Brown, 57 Barb. 265; Perkins v. Morse, 30 Minn. 11; Donohue v. Ladd, 31 Minn. 244; Brackett v. Gilmore, 15 Minn. 190 (245).

The burden is upon the party claiming an escrow to prove it. Chouteau v. Suydam, 21 N. Y. 179.   The indispensable characteristics of an escrow are:  (1) That the executed instrument has passed from the control and beyond the recall of the depositor. Cannon v. Handley, 72 Cal. 133; Stone v. Duvall, 77 Ill. 475; Devlin, Deeds, § 324; Prutsman v. Baker, 30 Wis. 644; 6 Am. & Eng. Enc. Law, "Escrow," IV, note 2.   (2) That there is a condition precedent to the vesting of title thereunder.   Washburn, R. P. 111, 298; Enc. "Escrow," III, 3.   (3) That its unauthorized surrender, its loss or destruction by the trustee, does not affect the rights, interest or relations of the parties.   Enc. "Escrow" VIII.   (4) That it must not be delivered to the vendee or lessee or his agent as the depositary.   Minneapolis v. Davis, 40 Minn. 110; Braman v. Bingham, 26 N. Y. 483; Enc. "Escrow," III, 3; Price v. Pittsburg, 34 Ill. 13. The delivery to Marble was a delivery to his principals, and the conditions of such delivery were immaterial, as they could not create an escrow.   Minneapolis v. Davis, supra.   The lease was put in Marble's hands by the Luther Mining Company.   It is settled that it was not an escrow.   Souverbye v. Arden, 1 Johns. Ch. 240; Holcombe v. Richards, 38 Minn. 38; Clark v. Gifford, 10 Wend. 310. But if such a condition as that relied on here could be interposed at all to prevent the lessees from taking possession of their muniment of title, it could only be retained to secure the performance of the condition—the payment of the notes—and could not prevent the title passing.   Wallace v. Butts (Tex. Civ. App.) 31 S. W. 687; Price v. Pittsburg, supra; Hathaway v. Payne, 34 N. Y. 92; Proprietors v. Hilton, 11 Gray, 407.   A deed found in the hands of the grantor is subject to the presumption of nondelivery, but an indenture of lease being of as much interest to the landlord as to the tenant, he has as much occasion as the tenant for its possession. Oneto v. Restano, 89 Cal. 63.   The delivery of the lease upon the uncontradicted testimony must be conclusively presumed.   Conlan v. Grace, 36 Minn. 276.   The fundamental case in this state on the subject of the "delivery of deeds" is Stevens v. Hatch, 6 Minn. 19 (64).   See, also, Schmidt v. Schmidt, 31 Minn. 106; Thompson v. Easton, 31 Minn. 99; Gaston v. Merriam, 33 Minn. 271.   Delivery to the beneficiary is delivery to the grantee.   Holcombe v. Richards,

38 Minn. 38. Nazro v. Ware, 38 Minn. 443, holds that delivery may be inferred from the conduct of the grantor. Lee v. Fletcher, 46 Minn. 49; Haeg v. Haeg, 53 Minn. 33; Wheelwright v. Wheelwright, 2 Mass. 446; Foster v. Mansfield, 3 Metc. (Mass.) 412; Fitton v. Inhabitants, 6 Nev. 196; Chouteau v. Suydam, supra. Parol contemporaneous evidence is admissible to contradict or vary the terms of a valid written instrument. Castle v. Elder, 57 Minn. 289. See, also, McLean v. Nicol, 43 Minn. 169. The lease was a complete contract, conveying an interest in lands. Rees v. Lowy, 57 Minn. 381; Abell v. Munson, 18 Mich. 306; 2 Taylor, L. & T. § 509. A conditional delivery cannot be made to the grantee. Braman v. Bingham, supra; Berry v. Anderson, 22 Ind. 36; Millett v. Parker, 2 Metc. (Ky.) 608; Newton v. Bealer, 41 Iowa, 334; Minneapolis v. Davis, supra. The doctrine of estoppel is defined in Stern v. Thayer, 56 Minn. 93, and Rees v. Lowy, supra. Plaintiffs' position is not shown by the evidence or otherwise to have ever been inconsistent with their present one claiming as lessees under the lease in question. Truesdail v. Ward, 24 Mich. 117; Sword v. Keith, 31 Mich. 247.

Forfeiture implies the taking or loss of something "in possession." Proprietors v. Hilton, supra. To be available as a defense forfeiture must be pleaded and cannot be proved under the general issue. Dutch v. Mooney, 12 Cal. 534; Gelston v. Hoyt, 3 Wheat. 246; Morenhaut v. Wilson, 52 Cal. 263; 2 Estee, Pl. §§ 3700, 3756. Equity often interferes to relieve against forfeitures, but never to devest estate by enforcing them. Mount v. Callison, 5 Sawyer, 439; Ortman v. First, 49 Mich. 56. Where a lease contains a re-entry clause, it can be terminated only by re-entry for breach of a condition subsequent, or by action as provided by law. Byrane v. Rogers, 8 Minn. 247 (281); Meni v. Rathbone, 21 Ind. 454. Where the lessor sells his whole estate in the lands, he waives any breach in the conditions of the lease. Wood, L. & T. § 225; Ohio v. Auburn, 64 Minn. 404. If ore could not be profitably mined during the term of this lease, the lessees were justified in not mining. Newton v. Nock, 43 Law Times (N. S.) 197; Jones v. Shears, 7 Carr. & P. 346. Relief from forfeiture is always proper when compensation in damages can be calculated with certainty. 8 Am. & Eng. Enc. Law, 449,

note; Garner v. Hannah, 6 Duer. 262. If plaintiffs were to pay accrued taxes as a condition precedent, the condition as a ground of forfeiture has been satisfied by payment by the lessor. Ohio v. Auburn, supra; Mathews v. Mulvey, 38 Minn. 342. A ratification operates upon the act ratified as though authority to do the act had been previously given. Cook v. Tullis, 18 Wall. 332. A written contract falling within the statute of frauds cannot be varied by a subsequent oral agreement of parties. Burns v. Fidelity, 52 Minn. 31. If the new lease is not valid the old lease is thereby revived and that relief may properly be granted in this action.

*Washburn, Lewis & Bailey,* for respondents.

An excess of parties defendant is not a ground for demurrer by a party properly sued. Lewis v. Williams, 3 Minn. 95 (151); Nichols v. Randall, 5 Minn. 240 (304).

In case of agreements for leases the intended lessee cannot enforce specific performance, if there appear on his part acts or omissions in reference to the land, which would work a forfeiture of the lease if executed and amount to a breach for which the lessor would have the right of re-entry. Pomeroy, Cont. §§ 355, 378; Gannett v. Albree, 103 Mass. 372. Delivery of an instrument is a question of intention, a question of fact. Devlin, Deeds, § 262; Conlan v. Grace, supra; Thompson v. Easton, 31 Minn. 99. A condition that the deed is to have effect and be operative only upon the express condition and understanding that certain things are to be first done is a condition precedent. Devlin, Deeds, § 964. When the instrument has been placed in the hands of the depositary, the grantee is not entitled to it, nor does he acquire any rights under it until he has performed the conditions upon which the depositary is to deliver it to him. Devlin, Deeds, § 321 (2d Ed.); Demesmey v. Gravelin, 56 Ill. 93; Skinner v. Baker, 79 Ill. 496. Where demand for the payment of taxes is made without effect it may constitute a forfeiture in a case where such payment is a condition in the lease. Mathews v. Mulvey, 38 Minn. 342. If the acceptance of an agency from both parties involves no violation of duty to either, the lessor may make the lessee's agent his to hold a deed and return it in case of nonperformance of a stipulated condition; and the rule that a

delivery to an agent is equivalent to a delivery to a principal would not apply in such a case. Devlin, Deeds, § 316; Cincinnati v. Iliff, 13 Oh. St. 235; Ashford v. Prewitt, 102 Ala. 264. An instrument is not in escrow if the lessor retains the right and control over it. If deposited with a third person with instructions not to deliver to the lessee except upon performance of certain specified conditions it is not a delivery nor is it an escrow. Devlin, Deeds, § 324; Campbell v. Thomas, 42 Wis. 437; Miller v. Sears, 91 Cal. 282.

Where contracts are made by negotiations, as by proposition and acceptance, the proposition must be in terms sufficient and free from ambiguity and the acceptance unambiguous, unequivocal and without condition or reserve. Pomeroy, Cont. §§ 58–63. Contracts must be certain, their provisions definite, and, if oral, resting upon part performance, to take them out of the statute of frauds. The terms must have been so clearly agreed upon as to make a complete contract if written out in all respects. Pomeroy, Cont. §§ 145, 154, 159; George v. Conhaim, 38 Minn. 338; Clampet v. Bells, 39 Minn. 272. Performance on the part of the plaintiffs is a necessary condition precedent to the enforcement or performance on the part of the defendants. Pomeroy, Cont. §§ 323, 369. The conditions having never been performed the defendants took back their lease and dealt with and sold and conveyed to others. Under such conditions, no court can decree performance. Pomeroy, Cont. §§ 292, 303, 464, 468.

The court will not decree performance where the parties are in default and where they have been guilty of acts which, if the lease were executed, would work a forfeiture thereof. Pomeroy, Cont. § 355; Brush-Swan v. Brush, 52 Fed. 37, 42; Leicester v. Front, 55 Fed. 205. There arose upon the acts, omissions and declarations of the parties a waiver of any claim to the lease, or any interest in the premises if any such claim previously existed. Stern v. Thayer, 56 Minn. 96; Dayton v. Craik, 26 Minn. 133; Bigelow, Est. 660, 669, 670; 2 Herman, Est. § 825.

COLLINS, J.

A full statement of certain facts covered by the findings herein, and in our opinion supported by the evidence adduced upon the

trial, seems essential, and upon this statement we have no hesitation in affirming the order appealed from, which denied plaintiffs' motion for a new trial.

June 20, 1893, one Luther, who had been the owner of the 80 acres in question for some time, executed a mining lease thereof, in which one Hibbing and one Trimble were named as lessees; a royalty of 30 cents per ton on a minimum annual output of ten thousand tons of ore being agreed upon. This lease extended for twenty years, and was assignable. It was executed under the terms of an option for a lease previously executed and delivered by Luther to Hibbing and Trimble, and, as a matter of fact, the latter had, while the option was held by them, assigned a two-thirds interest therein to these plaintiffs and another person, the defendant Brandin. The instrument contained the usual conditions of a mining lease, the lessees, Hibbing and Trimble, agreeing to commence explorations within thirty days from date, and to "work continuously during the existence of this lease." Proceeding, the instrument recited that said lessees "shall work the mine to its fullest capacity at all times," and that "the failure thereof shall become a forfeiture of this lease." It further provided that the lessees were to pay the royalty fixed by the lease quarterly, namely, April 15, July 15, October 15, and January 15, each year; the minimum quarterly payment being $750, whether ore was or was not mined. The lessees were also to pay all taxes assessed or levied on the 80 acres within thirty days after such taxes fell due and payable. Provision was made for the termination of the lease by the lessees in so far as they were obliged to pay royalty or taxes, by giving thirty days' notice to the lessor, whereupon the lease ended; all arrearages of royalty or taxes to be forthwith paid.

This lease was never recorded. The contract whereby the lessees had assigned a two-thirds interest in the option for a lease to these plaintiffs and Brandin bore date January 20, 1893, and made provision for the work of exploration. It expired July 1, 1893. Immediately upon its execution, plaintiffs and Brandin entered upon the 80, for the purpose of exploring for ore, and continued their explorations and search until about October, 1893, when they ceased work, and removed all tools and machinery therefrom. No work

was thereafter done or performed by either of said persons in the work of exploration or otherwise, or by the lessees, but all work upon the land was then and there abandoned. No mine was developed, and no ore discovered, by any of these parties. August 17, 1893, Luther sold and conveyed the land to defendant Luther Mining Company.

About December 17, 1894,—more than fourteen months after Hibbing, Trimble, and defendant Hall and his associates had abandoned all work upon the premises,—all of the parties just named joined in the execution and delivery to defendant Marble, who was a stockholder in defendant corporation, of a written instrument, whereby, after reciting the existence of the lease, and that a demand had been made that they surrender the same because they had abandoned all work upon the premises, they returned and surrendered to Luther all of their right, title, and interest in the lease and in the real property covered thereby. On the same day, but as of date January 1, 1895, plaintiffs Hall, Carlson, and Anderson and said Brandin executed and delivered their notes, payable to Luther, each for $500, and due in 30, 60, and 90 days, respectively, a total of $1,500,—much less than was due as royalty under the surrendered lease. Marble also drew another mining lease, wherein the mining company was the lessor and the four persons just named were lessees, covering the 80 acres here involved and other lands. This was also a 20-years lease, with conditions similar to those of the lease just canceled. It had other and further conditions, among them one to the effect that cessation of work upon explorations for twenty days at any one time before ore was found and exposed should, at the option of the lessor, work a forfeiture of the lease. Twenty thousand tons was the minimum number of tons the lessees were to mine annually, and they were to pay for this number at the rate of 25 cents per ton, the total payment to be not less than $5,000 annually, payable in instalments of $1,250 every three months, commencing April 20. It was also stipulated that, if the lessees should keep men steadily at work exploring and developing the lands, the royalty, sometimes called "ground rent," should be reduced to $3,000 per year until July 1, 1896. This lease was signed by the four lessees at Duluth on December 20, 1894.

It is to be noticed that when this lease was drawn not one cent had been paid on the first lease as royalty or ground rent, that an amount largely in excess of $1,500 was actually due, that the lessees were in default in the payment of taxes and otherwise, and that they had wholly failed to observe the conditions of the lease which required that they should continue at the work of exploring and developing an iron mine upon the premises. They had absolutely abandoned the work, and had long before removed all tools and machinery. This was conclusively established by the proofs, found as facts by the court, and stood confessed in the written release and surrender. This was also stated in the new agreement, and it was further stated that the new lease was to be accepted in lieu of the old. The officers of the lessor company resided in the state of Illinois, and to them Marble, in whose office at Duluth these instruments were executed by the two lessees named in the old and by the four lessees named in the new lease, immediately forwarded the instrument of release and cancellation, the three notes, and the last-mentioned lease, which, as will be noticed, had not then met the approval of, nor had it been executed by, the officers of the lessor company.

These documents were all forwarded to the officers of the company for acceptance or rejection. Marble did not pretend to act for the company, but rather as a friend of the plaintiffs and Brandin. January 2, 1895, the defendant company by its officers executed the lease, and forwarded it to Marble for delivery to the lessees upon the conditions that they should enter upon the land by February 1, and continuously carry on the work of exploration for iron ore, should pay up the accrued taxes on the 80 acres, and should pay the notes for $1,500, all to mature within 90 days. The notes were also sent to Marble. The officers of the company expressly advised Marble that the lease was not to be delivered or become operative until these conditions were complied with.

The lease was never delivered. Neither of the lessees ever entered upon the land, ever carried on the work of exploration, ever paid the taxes, ever paid any part of the notes, ever paid one cent of the royalty or ground rent provided for in either lease, were unable to do any or either of these things, and in July, 1895, advised

the mining company of their inability to proceed, and that they abandoned the premises and the transaction. They had before this actually abandoned the enterprise, having no means with which to continue work. The lease never went out of the possession of its custodian, Marble; and because of the lessees' failure to comply with the conditions imposed upon its delivery, and because of their declaration of abandonment, it was returned by Marble to defendant company.

About August 1, 1895, the latter entered into an option contract for a mining lease upon this land with one Cheesebrough, who on August 5 took possession of the premises, entered upon the same with men and machinery, continued in possession, and discovered and disclosed the existence of large bodies of iron ore, and developed a very valuable iron mine. Cheesebrough transferred his rights under the option contract to third persons, not parties to this action, and on December 23, 1895, these persons purchased the land from the mining company, duly receiving a conveyance therefor, which was placed upon record prior to January 1, 1896, at which time this action was brought. The premises were continuously occupied by Cheesebrough and his successors in interest from the time he took the option contract down to the day this action was commenced. Plaintiffs and defendant Brandin well knew of the entry and occupation of the premises by Cheesebrough, and of the work he was engaged in and prosecuting. They made no objections, but permitted him to proceed without protest. They never questioned his right to discover and develop an iron mine, or to deal with the mining company with reference to the land.

Brandin, it was alleged in the complaint, had transferred his rights in the lease to plaintiffs, but on the trial no effort was made to prove this, and the finding was that he had not. His position at the trial was in accord with that taken by his co-defendants, and upon his own motion the case was dismissed as to him. While the complaint averred a tender to the mining company of the amount due upon the lease for the first year, no evidence was introduced in support of such averment, and it was without foundation.

According to the statement of plaintiffs' counsel found in their brief, this was an equitable action to have plaintiffs' interest under

the lease and in the land determined and adjudged, upon the theory that the consideration for the new lease was in part the formal surrender of the old; that when the new lease was executed by the officers of the mining company and sent to Marble it vested in the lessees named therein a leasehold interest in the lands, which they could assert and establish in this action; that the officers of the mining company could not attach any conditions to a delivery; that Marble held the lease for plaintiffs' benefit, and that they could compel herein a surrender of the instrument as their muniment of title.

The argument of counsel was based upon these propositions. It is their claim that from the evidence, and especially from the language of the new lease, it conclusively appeared that the surrender of the first lease was based upon an execution and delivery of the second; that there was but one transaction in December, 1894, and that the new lease was unconditionally substituted for the old, so that no condition to its delivery could be imposed. The contention of defendants' counsel upon this is that the surrender and cancellation of the first lease and the execution and delivery of the notes were in themselves a complete transaction wholly independent of the negotiations for the second lease; that these negotiations were conducted by Marble at plaintiffs' request; that the defendant company had the absolute right to fix conditions precedent to a delivery; that these conditions were fixed; that the plaintiffs failed to observe them, and by affirmative action abandoned all interest in the lease and land, and surrendered all claim thereto.

We need not determine as between these claims. And we assume, without deciding, that plaintiffs' counsel are right, and that the new lease was designed as a substitute for the old, was but a continuation thereof, and a delivery could not be burdened with the conditions referred to. With this assumption the real object of plaintiffs' action is to compel specific performance of the terms and conditions imposed upon defendant company in its lease. We then have a case in which it stands confessed that plaintiffs were required by a mining lease promptly to enter upon real property, to make steady and continued explorations for mineral, to work actively in an attempt to discover iron ore, to develop a mine supposed to

70 M.—3

be on the premises; and that all of these requirements have been persistently disregarded. But little work was done, and no ore was discovered. The lessees then openly and avowedly abandoned the premises and all efforts to carry out the agreement. Although royalty or ground rent is due on the lease, and although taxes on the land, which they have agreed to pay, are past due, they pay nothing at all. After several months of default, and evidently without the slightest legal obligation to do so, the owner of the land accepts notes for much less than the sum due as royalty, accepts a surrender of the perfected lease, and enters into another lease with like conditions but covering more land. Not a single step is taken by plaintiffs to comply with the terms and conditions of the new contract. They do not enter upon the land, they do no work, they make no exploration, they make no effort to discover ore or to develop a mine, they fail to pay the taxes mentioned, they do not pay any part of the maturing notes, and they do not pay a penny of the royalty agreed on in the last contract; and finally, admitting their inability to proceed, they abandon all rights under the agreement and expressly surrender all claims under the contract. Meantime the owner of the land, acting upon their statements, enters into a contract with another person, and this person proceeds to explore the land for the discovery of ore. This is done with the knowledge of these plaintiffs, and without remonstrance upon their part. When, through the work of this person, large bodies of ore are discovered, and a very valuable iron mine is opened, the value of the land greatly enhanced and a sale made to still another party, the plaintiffs come forward and attempt to profit by the zeal and industry of others.

The plainest principles of equity forbid relief under such circumstances. The plaintiffs are not entitled to any benefit from the agreements which they have so flagrantly violated. To give them the relief demanded would violate the principle that one seeking the aid of equity must himself do equity,—must act in accordance with equity. Diligence is also expected of one who seeks equitable relief, for if, through unnecessary and unexplained delay, the value of the property involved has greatly increased or the circumstances of the parties have been changed, so that an injustice will be done

to others, equitable relief, such as specific performance, will not be granted.  If the party seeking relief has failed to assert his claim and has permitted others to go into possession and in any manner greatly increase or add to the value of the property while he has stood by in silence, he must be deemed to have waived and lost his equitable interests.  These rules are elementary, and need no citation of authorities.  The plaintiffs did not exercise good faith, nor were they diligent.  They were guilty of inexcusable laches from the beginning to the end.  Not only was their own delay inexcusable, but in silence and with knowledge they permitted Cheesebrough to take possession, and go on with the exploration, until his efforts were rewarded by the discovery of valuable iron ore upon the land. Their conduct was such that the defendant company was fully justified in concluding that the contract was no longer considered as binding.  Further than this, the court found, and the evidence warranted such finding, that plaintiffs and Brandin had expressly relinquished and abandoned all claims under the lease.

On these facts plaintiffs had no standing in court.  We need not specially refer to any of plaintiffs' assignments of error.

The order of the trial court stands affirmed.