J. Ralph LILYERD, et al., Petitioners, Respondents,

v.

E. Jerome CARLSON, Petitioner,

Production Credit Association of St. Cloud, Petitioner, Appellants,

and

E. Jerome CARLSON, Petitioner, Appellant,

v.

J. Ralph LILYERD, et al., Petitioners, Respondents.

No. C2-91-657.

Supreme Court of Minnesota.

May 14, 1993.

---

Lawrence R. Johnson, Ronald B. Peterson, Coon Rapids, for E. Jerome Carlson.

James L. Wiant, Gerald W. VonKorff, St. Cloud, for Prod. Credit Assoc.

Ronald R. Frauenshuh, Jr., Ortonville, for respondents.

Hubert H. Humphrey, Atty. Gen., Paul A. Strandberg, Spec. Asst. Atty. Gen., St. Paul, for amicus curiae State of Minn.

Timothy J. Sullivan, Eric N. Olsen, St. Paul, for amicus curiae MN Family Farm Law Project/Farmer's Legal Action Group, Inc.

WAHL, Justice.

The two consolidated cases from which this appeal is taken raise questions concerning the right of first refusal statute, Minn.Stat. § 500.24, subd. 6 (1992). J. Ralph Lilyerd and Christel Lilyerd (Lilyerds) have sought in this litigation to establish that they, individually, have a right of first refusal, which was denied to them, to acquire from E. Jerome Carlson (Carlson) the approximately 3,536 areas of land in Kanabec County to which Big Meadow Ranch, Inc. (Big Meadow), the corporation of which they are the sole shareholders, previously held fee title subject to five mortgages and liens. Carlson acquired title to the Big Meadow land by the purchase and assignment of the two junior mortgage interests of Production Credit Association of St. Cloud (PCA)[1] and the exercise of PCA's statutory right of redemption from the first mortgagee, Traveler's Insurance Company. The court of appeals held in *Carlson v. Lilyerd*, 449 N.W.2d 185 (Minn.App.1989), *review denied*, (Mar. 8, 1990) (*Carlson I*), that the first refusal statute was applicable to PCA's assignment of its junior lienholder interest to Carlson. The court of appeals remanded the case to the district court for a determination of the immediately preceding former owner to whom the offer of first refusal must be made.

Carlson now appeals the subsequent holding of the court of appeals in *Lilyerd v. Carlson*, 478 N.W.2d 534 (Minn.App. 1991) (*Carlson II*): (1) that the Lilyerds individually, and without distinction from the corporation Big Meadow, were the immediately preceding former owners of farmland for purposes of section 500.24 if, on remand, the district court finds Big Meadow was a family farm entity and the Lilyerds were family farmers; and (2) that the Lilyerds were entitled to specific performance to enforce their right of first refusal. The Lilyerds challenge the court of appeals' determination that the trial

---

1. Now Farm Credit Services of St. Cloud.

court's findings of fact that Big Meadow was a family farm entity and the Lilyerds family farmers were clearly erroneous and PCA, which sold its junior mortgage interests to a third party without offering the Lilyerds the right of first refusal, appeals both the reversal of the district court's denial of specific performance and the failure of the lower courts to dismiss PCA from the action. We reverse in part and remand.

An understanding of the intertwined facts and procedural history of these cases is necessary to the resolution of the issues on appeal. J. Ralph and Christel Lilyerd are the sole shareholders of Big Meadow Ranch, Inc., a Minnesota corporation, which since 1973 held the fee title to approximately 3,536 acres of land in Kanabec County, Minnesota. The Lilyerds assert that they purchased the land between 1960 and 1965 and that in 1973 they began giving mortgages on the land to a variety of lending institutions. Subsequently, Big Meadow and the Lilyerds suffered severe financial difficulties which caused the corporation and the Lilyerds as individuals, in January 1985, to separately file voluntary petitions in bankruptcy, originally as reorganization petitions under Chapter 11 of the United States Bankruptcy Code but converted in August, 1985, to Chapter 7 liquidations.

In a March 1985 order granting PCA relief from a stay pursuant to 11 U.S.C. § 362(d) and denying the debtors use of cash collateral,[2] the bankruptcy judge found the following mortgages against the Big Meadow property: first, Travelers Insurance Company, $79,500.00; second, Production Credit Association (PCA), $123,000.00; third, Farmers Home Administration, $155,560.00; fourth, Kanabec State Bank, $52,335.00; and, fifth, PCA, $377,000.00. There was also a lien for back real estate taxes of $18,000.00 and an ASCS lien

against a silo securing an obligation of $14,000.00. The encumbrances against the Big Meadow real estate totaled $1,024,691.95. The bankruptcy judge determined the fair market value of the Big Meadow real estate to be $640,000, the net liquidation value of the debtors' farm equipment to be $50,000.00, and the value of the debtors' herd of some 570 head of cattle (including present cash collateral) to be $120,000.00 for a total value of $810,000.00. PCA received $54,000 of cash collateral and permission to proceed to obtain possession of all the debtors' livestock, farm equipment, accounts receivable, and crops.

In December 1985, Big Meadow's bankruptcy trustee abandoned any interest in the real estate to the corporation because the debtors lacked property of any value.[3] The bankruptcy judge determined the estate lacked any non-exempt assets and, on February 16, 1986, entered an "Order Closing No Assets Case" abandoning the estate. Big Meadow retained its corporate existence and was not discharged from the debts listed on the petition. 11 U.S.C. § 727(a)(1). Thus, the mortgages survived the bankruptcy proceedings but the Lilyerds' personal debt was discharged.

Travelers, as holder of the first mortgage, commenced foreclosure by advertisement on the Big Meadow property and, at the sheriff's sale on April 11, 1986, purchased one of two parcels; the Lilyerds' son Kent was the purchaser of the other. Under the redemption statute, Minn.Stat. § 580.23, Big Meadow retained the right to redeem the property within 12 months by tendering payment to Travelers of the bid price plus certain costs by April 11, 1987. If Big Meadow failed to redeem the property, the junior mortgage or lien creditors had a right of redemption under Minn.Stat. § 580.24 in an order determined by the recorded priority of their interest in the land.

2. The order of the United States Bankruptcy Court, District of Minnesota, Fifth Division by Gregory F. Kishel, J., dated March 14, 1985, is included in the Appendix submitted by appellant Carlson.

3. Title to the property was revested in Big Meadow Ranch, Inc. See 11 U.S.C. § 554; *In re Franklin Signal Corp.,* 65 B.R. 268 (Bkrtcy.Minn. 1986) (Upon abandonment, ownership and control of the asset is reinstated in the debtor with all rights and obligations as before filing a petition in bankruptcy.)

PCA, as the next senior creditor, had the first right to redeem after Travelers. On April 8, 1987, three days before Big Meadow's one-year redemption period under Minn.Stat. § 580.23 expired, PCA sold Carlson its two junior mortgage interests with redemption rights under section 580.24. Big Meadow allowed the one year redemption period to expire without exercising its right to redemption. Carlson then effected a statutory redemption of the property as senior lienholder under the 1977 PCA mortgage. When the time periods for the holders of other recorded liens expired, Carlson, as holder of the next senior lien of record, redeemed under the 1982 PCA mortgage. He paid $167,934.00 to Travelers and $42,781.00 in back taxes. The interests of the other junior creditors in the property having been extinguished by failure to exercise their redemption rights, Carlson became fee owner. The Lilyerds remained on the property and refused to move.

In February 1988, Carlson brought an unlawful detainer action against the Lilyerds and Big Meadow. The Lilyerds counterclaimed, placing the title of the property in issue by asserting the invalidity of the Traveler's foreclosure and alleging that Carlson had acquired, with the property, PCA's first refusal obligation under Minn.Stat. § 500.24, subd. 6. PCA was named as a third party by the counterclaim but PCA was never notified or served. On March 11, 1988, Carlson and the Lilyerds appeared for a jury trial but agreed to waive a jury trial and submit the matter to the court on stipulated facts. The Lilyerds stipulated that "as a result of the sheriff's sale under the Traveler's mortgage and the valid redemption therefrom, Carlson is the legal and equitable owner of the premises." In an order dated May 11, 1988, the trial court found Carlson to be the legal and equitable owner, held that he was entitled to immediate possession of the property and ordered the Lilyerds to vacate the premises. The judgment was not appealed.

Carlson then proceeded to make improvements on the property which he claims are worth $273,962.00.

In July 1988, the Lilyerds brought suit against Carlson and PCA, claiming that Carlson had purchased the property subject to their statutory right of first refusal as individuals and should be required to transfer the land to the Lilyerds at the purchase price paid by Carlson. The Lilyerds, however, failed to serve the complaint on Carlson or to notify him of the claim. After learning of the Lilyerds' suit in January 1989, Carlson commenced a declaratory judgment action against the Lilyerds and Big Meadow, seeking a determination that he had no obligation to either the Lilyerds or Big Meadow under the right of first refusal statute. The two actions were consolidated. The district court dismissed the Lilyerds' claims and ordered judgment for Carlson, concluding that the right of first refusal statute was inapplicable to an assignment of a mortgage and that Travelers was the "immediately preceding former owner" of the property.

In *Carlson I,* the court of appeals reversed the district court and held that the assignment to Carlson of PCA's junior lienholder's interest in the property was governed by the "sale or lease" language of Minn.Stat. § 500.24, subd. 6, making the first refusal statute applicable. *Carlson v. Lilyerd,* 449 N.W.2d at 189. The court of appeals retroactively applied a 1989 legislative "clarification" of section 500.24, subd. 6 to determine that only a family farm, family farm corporation, or family farm partnership can be an immediately preceding former owner. The court of appeals then remanded to the district court for further proceedings to ascertain whether the bankruptcy estate had been the immediately preceding former owner on the date of PCA's assignment of its interests to Carlson.[4]

The district court, on remand, found that the bankruptcy trustee abandoned the

---

4. We declined review of *Carlson I* and have not offered our opinion as to whether the "sale or lease" language of Minn.Stat. § 500.24, subd. 6 is to be broadly construed to include an assignment of a junior lienholder's interests. For purposes of this action, that holding of *Carlson I* became the law of the case.

property; that Big Meadow is the immediately preceding former owner and the Lilyerds, as sole shareholders, are the immediately preceding former owners. The district court found that Big Meadow was a family farm entity and the Lilyerds were family farmers and that, because "the immediately preceding former owner was a family farm entity, the PCA had a duty to tender a right of first refusal to that entity." Because PCA had not made such a tender, it was liable to plaintiffs for violation of the statute. The district court refused, however, to grant specific performance because that remedy would work a hardship on Carlson who had expended great sums of money in a good faith effort to improve the property while the Lilyerds delayed in asserting a claim. Plaintiffs' only remedy against Carlson is for damages if Carlson is found not to be a bona fide purchaser.

The court of appeals, in *Carlson II*, found no support in the record for the district court's finding that Big Meadow was a family farm entity and Lilyerds family farmers, and remanded for additional findings on this issue. A majority of the panel, over a dissent by Judge Forsberg, indicated that, in interpreting Minn.Stat. § 500.24, it did not distinguish between the Lilyerds as shareholders and Big Meadow, the corporate entity, for purposes of ownership and held that, if the trial court finds Big Meadow was a family farm entity and the Lilyerds were family farmers, the Lilyerds are the immediately preceding former owners of the land. It then held that the district court abused its discretion in denying specific performance because, in its view, the Lilyerds did not unduly delay and that if on remand the trial court finds that Big Meadow is a family farm entity, the Lilyerds may exercise the right of first refusal and the trial court must determine damages sustained by Carlson. We granted further review on application of all parties.[5]

The right of first refusal was created by the legislature in 1986 as part of a compre-hensive effort to address the financial crisis in the Minnesota farm economy and, as a matter of public policy, to keep control of farm land in the hands of family farmers. The right of first refusal statute provides:

> **Subd. 6. Disposal of land.** (a) A state or federal agency, limited partnership, or a corporation may not lease or sell agricultural land or a farm homestead before offering or making a good faith effort to offer the land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor. The offer must be made on the notice to offer form under subdivision 7. The requirements of this subdivision do not apply to a sale or lease by a corporation that is a family farm corporation or an authorized farm corporation. This subdivision applies only to a sale or lease when the seller or lessor acquired the property by enforcing a debt against the agricultural land or farm homestead, including foreclosure of a mortgage, accepting a deed in lieu of foreclosure, terminating a contract for deed, or accepting a deed in lieu of terminating a contract for deed. Selling or leasing property to a third party at a price is prima facie evidence that the price is acceptable to the seller or lessor. The seller must provide written notice to the immediately preceding former owner that the agricultural land or farm homestead will be offered for sale at least 14 days before the agricultural land or farm homestead is offered for sale.

Minn.Stat. § 500.24, subd. 6(a) (1990).

The legislature had previously placed strong restrictions on the right of corporations to farm or own agricultural land. Minn.Stat. § 500.24, subd. 3. The limited interest in agricultural land that corporate lending institutions may possess is primarily in the form of a "bona fide encumbrance taken for the purposes of security." Minn.Stat. § 500.24, subd. 3(a) (1992). Corporations are allowed by subdivision 3(i) to ac-

---

**5.** We permitted the Attorney General of the State of Minnesota and Minnesota Family Farm Law Project/Farmers' Legal Action Group, Inc. to file briefs amici curiae.

quire agricultural land "by process of law in the collection of debts, or by any procedure for the enforcement of a lien or claim thereon, whether created by mortgage or otherwise * * *," but must promptly divest themselves of the land so acquired.[6]

Subdivision 6(a) is a further legislative limitation on the right of corporations to acquire and hold land. A corporation cannot lease or sell agricultural land or a farm homestead that was acquired by enforcing a debt against the agricultural land or farm homestead without first offering the land to the immediately preceding former owner at the price offered by a third party acceptable to the seller. Thus, farmers have the opportunity to repurchase their land from the foreclosing mortgagee where the mortgagee subsequently resells the land as required in Minn.Stat. § 500.24, subd. 3(i) and the creditor receives the same amount of money it would have accepted from a third party purchaser. The public policy considerations underlying both the first refusal statute and the redemption statutes are satisfied.

Although the concept of the right of first refusal is simple, the application of the first refusal statute and its interaction with the redemption statute has occasioned considerable judicial interpretation and legislative "clarification" and amendment. Courts reviewing variously structured transactions in agricultural land have been asked, among other questions, to decide when a corporate lender has "acquired" agricultural land or a farm homestead within the meaning and intent of Minn.Stat. § 500.24, subd. 6, and when the corporate lender has offered the land so acquired for sale or lease to a third party so as to entitle the immediately preceding former owner to a statutory right of first refusal.

On December 19, 1989, the court of appeals addressed those issues in *Harbal v. Federal Land Bank of St. Paul*, 449 N.W.2d 442 (Minn.App.1989), *review de-nied*, (Feb. 21, 1990), and *Carlson v. Lilyerd*, 449 N.W.2d 185 (Minn.App.1989), *review denied*, (Mar. 8, 1990), *Carlson I*, the case before us. The *Harbal* court recognized the remedial nature of Minn.Stat. § 500.24, subd. 6, broadly construed the word "acquire" to include the interest acquired by a purchaser of agricultural property at a foreclosure sale prior to the running of the redemption period and held that the foreclosing lender's transfer of the property through the assignment of the sheriff's certificate prior to the running of the redemption period is tantamount to a sale of property and triggers the obligation to extend the right of first refusal.

In *Carlson I*, the court of appeals held that the first refusal statute was triggered by the assignment of a junior lienholder's (PCA) right to redeem foreclosed property from the holder of the sheriff's certificate (Travelers) to a third party (Carlson) because, as in *Harbal*, "[a] narrow, constricted reading of the statute would circumvent its purpose by allowing lending corporations which acquire an interest in agricultural property by the enforcement of a debt to transfer the property without first offering to sell it to the foreclosed owners." 449 N.W.2d at 189–90. That holding became the law of the case and is not an issue in this appeal.

■ While the first refusal statute may perhaps be applicable in instances where the corporate creditor has acquired its lien in agricultural land as allowed by Minn. Stat. § 500.24, subd. 3(a) and seeks to collect the underlying debt through the sale of its interest in that land to a third party, that issue is not before us. Instead, this record focuses on the situation where the right of first refusal has been held to be applicable if the immediately preceding former owner can be identified. First, an immediately preceding former owner must be the entity with record legal title to the agricultural land before acquisition by the

---

6. Minn.Stat. § 500.24, subd. 3(i) (1992) provides in part: " * * * all lands so acquired [must] be disposed of within ten years after acquiring the title if acquired before May 1, 1988, and five years after acquiring the title if acquired on or after May 1, 1988, * * * and * * * the land so acquired shall not be used for farming during the ten-year or five-year period except under a lease to a family farm unit, a family farm corporation, an authorized farm corporation, a family farm partnership, or an authorized farm partnership * * * *"

corporation; and second, the immediately preceding former owner must be a family farm, family farm corporation, or family farm partnership. Minn.Stat. § 500.24, subd. 6(b) (1992).

It is undisputed that Big Meadow Ranch, Inc. held the record legal title to the agricultural land before its acquisition by Travelers; although legal title to the property was in the bankruptcy estate for a time, that title was revested in Big Meadow in December 1985, when Big Meadow's bankruptcy trustee abandoned to the corporation any interest in the real estate. 11 U.S.C. § 554. The Lilyerds claim an individual interest in the property separate from their interest as shareholders in Big Meadow because the Report of Abandonment of Real Property issued December 19, 1985, by the bankruptcy court abandoned the real estate in their case individually "pursuant to Judge Kishel's order dated September 20, 1985." This claim is unavailing, however, for Judge Kishel's order includes a specific finding that Big Meadow Ranch, Inc. holds the fee title to the real estate.

■ The district court found that Big Meadow Ranch, Inc. was the immediately preceding former owner and that the Lilyerds, as the sole shareholders of Big Meadow, also were the immediately preceding former owners. The court of appeals held that, in interpreting Minn.Stat. § 500.-24, it did not distinguish between the Lilyerds and Big Meadow for purposes of ownership. However, neither court has cited authority for allowing the sole stockholders, individually, to exercise the rights of the corporation.

. [3, 4] As a general rule, the rights of a corporation can be exercised by the corporation but the shareholders cannot exercise those rights in their name. *Singer v. Allied Factors, Inc.*, 216 Minn. 443, 445, 13

N.W.2d 378, 380 (1944). There are circumstances, however, where equity will allow the court to consider the shareholder and the corporate entity as one. *Roepke v. Western Nat. Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn.1981).[7] It is not clear to us that equity would be served by allowing such a reverse pierce in this case. While the Lilyerds are the sole shareholders of Big Meadow, have treated the property as their own, and are the "related persons * * * residing on or actively operating the farm" necessary to qualify Big Meadow as a family farm corporation under section 500.24, subd. 2(c), they have also used the corporation to shield themselves personally from the debts incurred in the support and operation of the property. Their personal debt was discharged in bankruptcy while the debts of Big Meadow reattached. Subdivision 6(b) provides that if the immediately preceding former owner is a bankruptcy estate, the debtor in bankruptcy is the immediately preceding former owner. In such a situation the right of first refusal would, of necessity, be exercised by the corporate debtor for the benefit of its creditors. It is our view then that where the real estate has been abandoned, fee title has revested in Big Meadow, and the corporate debts have reattached, it would be inequitable and contrary to the policies underlying the bankruptcy law for the Lilyerds, as shareholders of Big Meadow, to receive the benefit individually of any right belonging to the corporation while the creditors of the corporation remain unpaid.[8] Under the facts and circumstances of this case, Big Meadow, the corporate entity with record legal title to the agricultural land before foreclosure, and the Lilyerds, its sole shareholders, are distinguishable for purposes of ownership under Minn.Stat. § 500.24, subd. 6.

---

7. Courts in Florida, Pennsylvania, and New York have disregarded the corporate entity in probate proceedings "because the testator owned all, or substantially all, of the stock, treated the property as his own, and, most importantly, because no shareholder or creditor would be adversely affected." 302 N.W.2d at 352.

8. Even if a dissolution proceeding were initiated under state law, Big Meadow's creditors would be satisfied before distribution of the remaining assets to the Lilyerds as shareholders. Minn. Stat. § 302A.753 (1992).

To be an immediately preceding former owner entitled to the right of first refusal, Big Meadow must demonstrate that it is a family farm corporation as defined by Minn.Stat. § 500.24, subd. 2(c). The court of appeals correctly determined that a remand to the trial court was necessary to allow it to take additional evidence or to supplement its findings in this regard. If, on remand, the district court finds Big Meadow is a family farm corporation, it would follow that the corporate entity Big Meadow is the immediately preceding former owner entitled to a tender of a first refusal offer by PCA. It has already been determined in *Carlson I*, 449 N.W.2d 185, 192, that PCA had a duty to tender a right of first refusal to the immediately preceding former owner at the time of the assignment of its mortgages to Carlson and its failure to do so violated Minn.Stat. § 500.24, subd. 6. The question remains as to the remedy for that failure in the procedural context of this action.

The Lilyerds, for themselves individually and for Big Meadow, have insisted from the outset that specific performance is the remedy for such a violation. Generally, specific performance is the appropriate remedy when a right of first refusal has been improperly denied. *See M.L. Gordon Sash & Door Co. v. Moorman*, 271 N.W.2d 436, 440 (Minn.1978); *Harbal v. Federal Land Bank of St. Paul*, 449 N.W.2d 442 (Minn.App.1989).[9] Specific performance is an equitable remedy, however, "addressed to the sound discretion of the trial court," *Flynn v. Sawyer*, 272 N.W.2d 904, 910 (Minn.1978); *Boulevard Plaza Corp. v. Campbell*, 254 Minn. 123, 134, 94 N.W.2d 273, 283 (1959), and is generally not afforded where it will work a hardship or injustice on either party. *Johnson v. Johnson*, 272 Minn. 284, 292, 137 N.W.2d 840, 847 (1965). On review, we have not interfered unless the trial court clearly abuses its discretion. *Flynn*, 272 N.W.2d at 910; *O'Brien v. Kemper*, 276 Minn. 202, 212, 149 N.W.2d 487, 493 (1967). Here, the trial court denied specific performance because during plaintiffs' delay in asserting their claims Carlson "expended great sums of money in a good faith effort to improve the property" and voiding the assignment between PCA and Carlson would impose a substantial hardship on Carlson. While the court of appeals, ascertaining no delay in the assertion of Lilyerds' claims, concluded that the trial court abused its discretion, we cannot agree with that conclusion.

First, even though real property is at issue, specific performance is not appropriate if a party, "through unnecessary and unexplained delay," allows a significant increase in the value of the property to occur, or if the "circumstances of the parties have been changed so that an injustice will be done to others." *Anderson v. Luther Mining Co.*, 70 Minn. 23, 34–35, 72 N.W. 820, 822 (1897). The trial court considered the extensive procedural history, the facts and equities of this matter. Big Meadow allowed its right to redeem from Travelers' foreclosure to expire on April 11, 1987. On April 13, 1987, Carlson properly redeemed from the Traveler's foreclosure as a junior mortgagee, paying Traveler's approximately $160,000.00. He later paid delinquent real estate taxes of $42,000 and has paid all taxes since then. Six months after the acquisition, in August 1987, the Lilyerds, inquiring of PCA about their right of first refusal, were told in writing by PCA that the statute was inapplicable to the sale of mortgages. When the Lilyerds remained on the land and refused to move, Carlson brought an unlawful detainer action in February 1988 against both the Lilyerds and Big Meadow. Lilyerds counterclaimed, placing the title of the property in issue and alleging that Carlson had acquired, with the property, PCA's first refusal obligation. PCA was named as a third party by the counterclaim but was never notified or served. The matter was scheduled for a jury trial on March 11, 1988, but the parties

---

**9.** The *Harbal* court held that where the foreclosing creditor assigned the sheriff's certificate of sale to a third party with knowledge of the right of first refusal of the immediately preceding former owner, the trial court was well within its authority in awarding the equitable relief necessary for proper enforcement of the statutory right of first refusal, including avoidance of the sale between the third party and the foreclosing creditor. 449 N.W.2d at 448–49.

waived that right and submitted the case for trial by the court on stipulated facts, including the Lilyerds' stipulation that Carlson is the legal and equitable property owner of the premises. The trial court's order of May 11, 1988, finding Carlson to be the legal and equitable owner of the premises and entitled to possession, was never appealed.

■ While an unlawful detainer action is generally summary in nature, determines only present possessory rights, and usually does not bar subsequent actions involving title or equitable rights of the parties, *University Community Properties, Inc. v. Norton,* 311 Minn. 18, 21–22, 246 N.W.2d 858, 860 (1976); *Goldberg v. Fields,* 247 Minn. 213, 215, 76 N.W.2d 668, 669 (1956); *Keller v. Henvit,* 219 Minn. 580, 585, 18 N.W.2d 544, 547 (1945), the counterclaim here could have been tried to a jury. By first denying and then agreeing that Carlson was the legal and equitable owner of the property, the Lilyerds invited Carlson to believe that the unlawful detainer action settled present possessory, legal, and equitable ownership rights in the property. Having all issues settled and no appeal taken, there was nothing more that Carlson could reasonably have expected to do to perfect his title to the property. He proceeded to expend $273,962.00 in what the trial court found to be a good faith effort to improve the property. Although the Lilyerds brought suit against Carlson and PCA in July 1988 claiming that he had purchased property subject to their right of first refusal and should be required to transfer the land to the Lilyerds at the purchase price he paid, they neither gave notice to Carlson nor served him with the complaint. Instead, Carlson learned of the Lilyerds suit in January 1989, eight months after the judgment issued on the unlawful detainer action. Under these cumulative circumstances, the delay in asserting their claim was such that voiding the assignment between PCA and Carlson would work an injustice and impose a substantial hardship on Carlson and the district court properly exercised its discretion in denying the remedy of specific performance for PCA's violation of its statutory obligation to tender an offer of first refusal.

If, on remand, the corporation is able to demonstrate its entitlement to the statutory offer, the question which remains is what damages, if any, Big Meadow, Inc. may recover because of PCA's statutory violation. While the corporation's failure or inability to redeem the property pursuant to Minn.Stat. § 580.23, by tendering payment to Travelers by April 11, 1987, may be dispositive of its claim of entitlement to damages, we are unable to so hold on this record and, accordingly, remand to the trial court for its determination of this question as well.

Reversed in part and remanded.

PAGE, J., took no part in the consideration or decision in this case.